MARY A. BISHOP AND OTHERS *vs.* EDWARD R. HOWARTH AND OTHERS.

New Haven and Fairfield Cos., April T., 1890. ANDREWS, C. J., CARPENTER, LOOMIS, SEYMOUR and TORRANCE, Js.

A testator who had for several years before his death carried on with his three sons a retail trade in a city store, which he owned, and whose other children were two daughters, by his will gave his store and all other property pertaining to the business, with his notes and accounts, to his three sons equally, and certain other real estate to his two daughters respectively, the bequest to the sons containing the following provision—"after payment of my debts, which are to be paid from said personal property." Three years afterwards the testator borrowed

$2,000 to furnish additional capital for the store, and secured the loan by a mortgage of one of the places given by the will to his daughters. Three years later he made a codicil which contained the following provision:—"Since the making of my will my store having been mortgaged by me to obtain money to discharge my obligations as bondsman for $B$, which ultimately occasioned my becoming the owner of a house and lot in $W$, I hereby devise said property in $W$ to my three sons in equal shares." Held that it was the intention of the testator that the sons should take the property given them subject to the payment by them of the debts of the estate, including the $2,000 mortgage upon the real estate devised to one of the daughters.

The three sons, with full knowledge of the contents of the will and codicil, took possession of the store and the business, and of all the property bequeathed to them by the will and codicil, immediately after the death of the testator, and continued to conduct the business as their own and claimed to own the property absolutely and in fee simple. Held to be an acceptance of the bequest on the part of the sons and to make them personally liable for the payment of the debts.

The duty to pay the debts being thus put upon the sons, the fact that the personal property given them and out of which the will directed that the debts should be paid, was less than the amount of the debts, was immaterial.

The fact that at the testator's death the personal property given the sons was insufficient to pay the debts, was not a legitimate one to disprove the fact that he intended to have the debts paid by them when he made the will and codicil.

A general direction in a will to pay the testator's debts without words of restriction, means all debts, whether secured by mortgage or unsecured.

The intention of a testator is committed by the law to the written language of the will, aided, if it may be, by the surrounding circumstances, and cannot be shown by extrinsic evidence.

[Argued April 16th—decided October 27th, 1890.]

SUIT to compel the defendants to pay a certain debt secured by mortgage upon certain property of the plaintiffs, which the plaintiffs claimed was a charge upon certain property bequeathed to the defendants by John H. Howarth deceased, all the parties being children of said Howarth and claiming under his will; brought to the Superior Court in New Haven County, and tried before *F. B. Hall, J.* Facts found and judgment rendered for the plaintiffs, and appeal by the defendants. The case is fully stated in the opinion.

*J. W. Alling*, for the appellants.

1. The settled as well as natural meaning of phraseology giving land or personal property "after the payment of debts"—and especially giving land and personal property after payment of debts "which are to be paid from said personal property," is to create a charge upon the land or personal property, but not to impose a personal obligation on the devisee or legatee to pay the debts. Such phraseology is construed as giving what is left after the payment of debts. 2 Redf. on Wills, 853; *Denn* v. *Moore*, 2 Bos. & Pul., 247; *Doe* v. *Clarke*, 5 id., 343; *Goodtitle* v. *Maddern*, 4 East, 496; *Jackson* v. *Bull*, 10 Johns., 148; *Olmstead* v. *Olmstead*, 4 N. York, 56; *McClellan* v. *Turner*, 15 Maine, 436. The intent to create in this case a personal obligation to pay debts, of course must rest upon implications. New words are to be supplied to the will. It must be made to read, "after payment *by them* of my debts," or ",after payment of my debts, which are to be paid *by them*, from said personal property." If the plaintiffs say that the words "by them" are not to be read into this will by implication, confessedly they have no case. If the sons were to personally assume and pay his debts, how could it make any difference to them, or the testator, from what fund they were to get the money? He put no restraint on the sale or disposition by his sons of the Chapel street store. It is claimed that his sons were personally to pay his debts, no matter from what source they are compelled to get the funds, and if the judgment is right, they must get the funds in part from the Chapel street store, and yet the testator wrote most explicitly that the "debts were to be paid from said personal property," and by the clearest implication he exempted the Chapel street store from any charge for the payment of debts. Not only so, but the testator proceeded to, and in the clearest and most emphatic manner did, impose a personal obligation on his sons in respect to their mother, to whom and on whose account, in consideration of the devise of the *land alone*, they were personally to pay certain sums of money.

2. The testator never intended to impose on his sons an obligation to pay debts beyond the value of the store per-

sonal property, even if he supposed they would attend to the matter of paying the debts. This is shown by his gift to them of what would be left after payment of debts. The value of the store personal property would be obvious; the amount of the debts would be obvious. He supposed there would be a surplus and gave it to his sons. In *Watts* v. *Watts*, 38 Ohio St., 480, the will, after sundry devises and legacies, gave the rest and residue of real and personal property to the widow, to be used for the payment of debts and other purposes, but giving her a large beneficial interest therein. The lower court held that the widow, by accepting the provisions made for her in the will, became personally liable for the debts, even though they exceeded the property received; but the Supreme Court ruled that she had not become personally liable for the debts, beyond the assets which came to her hands, applicable in the exercise of the discretion vested in her to their payment. It will be observed that in that case there was almost an explicit direction and condition that the widow should pay the debts. In a well considered case, *Maybury* v. *Grady*, 67 Ala., 147, *G* bequeathed to his wife, " after payment of all my just debts, one half of my entire personal property," which turned out to be insufficient for that purpose. He made various devises and legacies, and gave the residue of his estate to his executors, in trust for various purposes, and one third of the net income of the real estate to his wife in lieu of dower. It was held that the half of the personal property was charged as the primary fund for the payment of debts, which being exhausted, the debts remaining unpaid, constituted a common and equal charge on the whole balance of the estate, excluding the portion given in lieu of dower. See also *Emery* v. *Batchelder*, 78 Maine, 233 ; *Hulton's Appeal*, 104 Penn. St., 359 ; *Topliff* v. *Jackson*, 12 Gray, 565.

3. The codicil of 1884 clearly supports our view of this controversy. Its meaning is clear and distinct. He gives his sons the Campbell Avenue property. He states that the reason for doing so is that his unfortunate complications with Barnett have resulted in " an additional mortgage on

the Chapel street store." He says that his intention, in the codicil, was to compensate his sons for the increased incumbrance on the Chapel street store by giving them the Campbell Avenue property. He may have given a compensation greater than the incumbrance; he may or may not have had the same opinion as the appraisers afterwards had; but it was for the testator to do with it as he pleased.

4. Courts may or may not be compelled to include in the word "debts," as found in the phrase "after payment of my debts, which are to be paid from said personal estate," the testator's mortgage debts. When the will was made in 1878, the mortgage on the Chapel street property was only $2,500, and it may have been that he considered his store personal property sufficient to pay this and all his debts. But when he wrote the codicil it is clear that he had the notion of the average business man, who expects that he to whom incumbered real estate is given will himself take care of the incumbrance, and it seems clear that, if the will had been written in 1884, and had embraced the provisions of the codicil, the testator would not have intended to include mortgage debts in his use of the word "debts." Mortgages to savings banks and trust funds, like those in this case, are never presented to an executor for payment, and practically are not debts which an executor pays. 2 Redfield on Wills, 863–876, §§ 29, 30, 31.

5. The court erred in its ruling upon the admissibility of evidence. If this judgment is to be placed upon the conduct of the sons in taking the store personal property after the death of Mr. Howarth, evidence of mental and physical weakness of Mr. Howarth at the time the will was made, or of the conduct of the sons with regard to the making of his will, was wholly irrelevant, and in the highest degree prejudicial.

*H. Stoddard*, for the appellees, cited—2 Wms. Exrs. (6th Am. ed.,) 1548; 3 id., 1805, 1806, 1810, 2046; *Allen* v. *Allen*, 30 Beav., 403; *Stone* v. *Parker*, 1 Drew. & Sm., 212; *Messenger* v. *Andrews*, 4 Russ., 478; *Eno* v. *Tatham*, 3 De G.

J. & S., 446; *Talbot* v. *Earl of Radnor*, 3 Mylne & K., 254; *Maxwell* v. *Maxwell*, 23 Law Times Reps., 325; *Lewis* v. *Lewis*, L. R. 13 Eq., 222; *Ward* v. *Wood*, L. R. 32 Cha. Div., 519; *Lord* v. *Lord*, 22 Conn., 595; *Olmstead* v. *Brush*, 27 id., 530; *Whittemore* v. *Hamilton*, 51 id., 160; *Hyde* v. *Baldwin*, 17 Pick., 303; *Gorham* v. *Dodge*, 122 Ill., 535; *Gridley* v. *Gridley*, 24 N. York, 130; *Brown* v. *Knapp*, 79 id., 186.

LOOMIS, J.　The plaintiffs, Mary A. Bishop and Jeannette M. Bradley, are the daughters, and the defendants, Edward R., John H., and Arthur M. Howarth, the sons, of the late John H. Howarth of New Haven, who died on the 7th day of July, 1885, leaving a will executed April 8th, 1878, with a codicil executed November 10th, 1884. The following is a copy of the will:—

"I, John H. Howarth, of the town of New Haven and state of Connecticut, do make and publish this my last will and testament.

"I give, devise and bequeath to my three sons, Edward R. Howarth, John H. Howarth, Jr., and Arthur M. Howarth, my store No. 243 Chapel street, in the city of New Haven, including the buildings and the lot of land on which they stand; and also the stock, fixtures, notes, accounts, and all other property thereto appertaining, after payment of my debts, which are to be paid from said personal property; to hold said real and personal property to them and their heirs forever in equal shares: provided however, and said devise of the land and buildings is upon condition, that my said sons shall pay to my beloved wife, Ann M. Howarth, the sum of five dollars per week, and all the taxes upon the property hereinafter given to her, during her natural life.

"I give and devise to my said wife, Ann M. Howarth, in addition to the above provision for her, the use, income and improvement of my two houses and lots of land, Nos. 24 and 26 Fair street, in the city of New Haven, and of all the remainder of my personal property during her natural life, in lieu of all her other claims on my estate.

" After the death of my said wife I give and devise my said house and lot No. 24 Fair street, New Haven, to my daughter Mrs. Mary A. Bishop, and her heirs forever; and I give and devise my other house and lot, No. 26 Fair street, after the death of my said wife, to my daughter Mrs. Jeannette Bradley, and her heirs forever, they to assume all taxes and expenses of said property from that time;—provided, however, that in case either of them should die before my said wife, leaving no children, the house and lot devised to her shall belong to all my remaining children equally, and their heirs forever.

" All the personal property of which my wife has the life use I give after her death to all my children, to be equally divided between them.

" I appoint my said wife Ann M. Howarth the executrix of my will. ·

" New Haven, April 8th, 1878.

J. H. HOWARTH. [L. S.] "

The following is a copy of the codicil.

" I, John H. Howarth, of New Haven, Conn., do make and publish the following codicil to my will, dated April 8th, 1878.

" Since the making of said will my store in Chapel street having been mortgaged by me to obtain money to discharge my obligation to Christ Church in West Haven, in the town of Orange, as bondsman for William N. Barnett, which ultimately occasioned my becoming the owner of a house and lot of land on the corner of Campbell Avenue and Main street in said West Haven; I hereby give and devise said land in West Haven, with the buildings thereon, to my three sons, Edward R. Howarth, John H. Howarth, Jr., and Arthur M. Howarth, all of New Haven, and their heirs forever, in equal shares. My will is hereby confirmed. New Haven, Nov. 10th, 1884.

J. H. HOWARTH. [L. S.] "

The two Fair street houses devised to the widow for life, and then to the two daughters in fee, were unincumbered at the date of the will, and were valued at forty-five hundred

dollars. Afterwards, but before the date of the codicil, the testator borrowed the sum of two thousand dollars to furnish additional capital for the Chapel street store, and secured it by a mortgage of the Fair street property, which is still outstanding, and constitutes the debt in controversy, and to compel the payment of which by the defendants this suit is brought.

For many years prior to the making of the will the testator had owned the Chapel street store and had carried on there a retail trade in boots and shoes, and he had employed in the business his three sons, the defendants, from their boyhood. When the will was executed the value of the Chapel street store was about sixteen thousand dollars and it was subject to a mortgage of twenty-five hundred dollars.

The finding gives a history of the business of the store and its results, also a statement of the valuation of the different items of property and the amount of liabilities. It appears that the testator had at his death the following items of tangible property, to wit:—

| | |
|---|---|
| Chapel Street store, worth, . . . | $16,000.00 |
| Campbell Avenue property, worth, . | 8,500.00 |
| Fair Street property, worth, . . . | 4,500.00 |
| Stock of goods in Chapel Street store, worth, | 5,272.24 |
| Cash in bank, . . . . . . | 1,922.35 |
| Book-accounts, good, . . . . | 641.45 |
| Two shares of Derby Railroad stock, at | |
| $25 each, worth, . . . . . | 50.00 |
| Household Furniture, etc., . . . | 190.70 |

Total, . . . $37,076.74

But as the last two items, $50 and $190.70, were given to the wife for life, with remainder to all the children equally, those sums, amounting to $240.70, may be deducted, leaving a balance of $36,836.04 disposed of by the will to the testator's children.

The liabilities of the testator at his death, were (if we include the $17,109.46 in notes given by the defendants) as follows, to wit:—

Said merchandise notes, . . . $17,109.46

Mortgage deed secured on Chapel Street
property, . . . . . . 7,000.00

Mortgage deed secured on Fair Street
property, . . . . . . 2,000.00

Taxes, . . . . . . . . 650.06

Funeral expenses, . . . . . 285.91

Total liabilities, . . $27,045.43

Leaving a balance of assets over liabilities of $9,790.61

The defendants take under the will the following items
of property, to wit:—

Chapel Street property, worth, . . $16,000.00

Campbell Avenue property, worth, . . 8,500.00

Stock of goods, etc. in Chapel Street store, 5,272.24

Cash in bank, . . . . . 1,922.35

Good book accounts, . . . . 641.45

Total, . . , $32,336.04

Counsel on both sides in their briefs have made elaborate
computations based on the data given in the finding, to
show, on the one hand, that there was in fact nearly an
equal division, and on the other that there will be inequal-
ity in favor of the daughters unless they are required to
assume and pay the debt in question. Several items essen-
tial to an accurate computation are not found, as, for in-
stance, the value of the good-will of the Chapel street
store given to the sons, and the impairment of the market
value of the Fair street property given to the daughters,
arising from the fact that it was subject to the life use of
their mother. Whether it was the intention of the testator
to make an equal division does not clearly appear. In two
provisions of the will for the distribution of a limited
amount of property, one depending on an uncertain contin-
gency, an equal division was provided for. The point is
not one of controlling importance and we have not arrived
at any very definite conclusion in regard to it. It is mani-
fest that the testator intended that the sons should have the

store property, so that they might continue the business at the old stand.   But as that constituted the bulk of his estate, we fully believe that he intended to put the burden of the debts on the same property, in order to exonerate the portion given to the daughters, and thereby to reduce the apparent inequality as far as practicable.

Although the finding shows that the defendants conducted themselves in all respects precisely as they would have done had their conduct been impelled by a conscious personal obligation to pay the debts of the testator out of the personal estate bequeathed to them, yet it is undoubtedly true that conduct alone will not furnish a sufficient foundation for the legal obligation upon which the complaint is based.   As a practical construction of the will by an interested party it may be considered, but to be efficacious it must relate to and take hold of some provisions of the will.   An acceptance of a benefit under a will accepts also the burden which the will has connected with such benefit.

Therefore the controlling question in this case is, whether the will, either expressly or by fair implication, imposed on the defendants the duty to pay the debts of the testator if they should take the property bequeathed.

It must be conceded at the outset that a personal obligation to pay the debts is not in terms imposed on the defendants, but the scheme of the testator and the entire will, taken in connection with the circumstances, furnish ground for a strong implication that such was the intention of the testator.

In the first place, there can be no doubt that the testator intended to cast the entire burden of the debts on the property which the will gives to the defendants.   This could hardly be questioned, even if the last clause which specifies. the property which was to bear the burden had been omitted, and the will had simply given to his three sons the Chapel street store and all the personal property appertaining thereto as described, adding only the words " after payment of my debts."   We could not then have understood that the testator meant that the debts were first to be paid by the executor, in the ordinary way, out of the general property

and assets of the estate, but, on the contrary, that the payment was to be made exclusively from the property so devised and bequeathed.

But the testator put the matter beyond all controversy by adding, after the word "debts," the words "which are to be paid from *said* personal property." No other personal property than that bequeathed to the sons can possibly be referred to in that passage. If the contention of the defendants is to prevail, and the daughters are compelled to pay the debt of the testator secured by mortgage on the property devised to them, the result must, as it seems to us, contravene the provisions of the will and do violence to the testator's intention.

The defendants' counsel however would avoid this conclusion by the claim that mortgages of this kind are not debts within the meaning of the term as used by the testator. But did not the testator intend that his sons should pay the mortgage debt on the Chapel street store—the only debt, so far as the finding discloses, that was on the store property when the original will was made? If one mortgage debt is to be included, upon what principle can the other be excluded? The testator's language was not qualified in any manner; he required the payment of "his debts," which meant all his debts without distinction, and had he been disposed to discriminate, if we may judge by the tenor of his will, the debt in question, which was contracted for the sole benefit of the store, would have been the last one to be excluded from the provision as to payment. Moreover the law is undoubtedly so that a general direction in a will to pay the testator's debts, without words of restriction, must mean all debts, whether secured by mortgage or unsecured. 2 Wms. Exrs. (6 Am. ed.), 1077; 3 id., 1795 to 1799; *Allen* v. *Allen*, 30 Beav., 403; *Stone* v. *Parker*, 1 Drew. & Sm., 212; *Maxwell* v. *Maxwell*, 23 Law Times Rep., 325.

But who was to pay the debts? The will does not expressly say. Either the sons or the executor were in the mind of the testator. But the sons only were named in con-

nection with this clause :—" I give, etc., to my three sons " (naming them) " my store, No. 243 Chapel street in the city of New Haven, including the buildings, and the lot of land on which they stand ; and also the stock, fixtures, notes, accounts, and all other property thereto appertaining, after payment of my debts, which are to be paid from said personal property."

It seems most reasonable to suppose that the father contemplated that the sons, rather than the executor, would attend to this duty. The sons were in the store when the will was made and had been from their boyhood, and the will shows the father's strong desire that what had been his own lifework should become theirs also, to be continued too at the old stand, and that the continuity of the business should not be interrupted by his own death. It must have been manifest to him that if the executrix was to take possession of and sell the property in the store to pay the debts in the ordinary way, it would be a most disastrous interruption to the business, if it did not destroy it altogether ; while on the other hand, if the sons were to pay the debts in the course of their business, it would be likely to go on precisely as it had before his death.

The finding shows that after December 31st, 1877, the defendants conducted the business practically as their own. At that date they commenced to assume the trade debts, at least to some extent, and at the death of the testator there was outstanding in notes signed by them a little over seventeen thousand dollars. It is to be presumed that the testator had some knowledge of this course of business when he made his will and when he reaffirmed it by the execution of the codicil. If so, it was most natural for him to assume that the sons would attend to the payment of the debts.

The argument attempted to be derived from the fact that at the testator's death the personal property was insufficient to pay the debts, is not a legitimate one to disprove the fact that he intended to have the debts so paid when he made the will and codicil. The question is simply what the testator thought and intended when he executed the will and codi-

cil, in view of his knowledge of facts then existing, and not what he might have thought in view of a different state of facts subsequently arising. There is nothing in the finding to show that the property at the time the will was made was insufficient to pay the debts. The testator thought it sufficient, and intentionally imposed upon it the burden of all the debts. The duty to pay was put upon the defendants if they took the property, and the fact that its value was less than the amount of the debts is immaterial.

In the course of the argument for the defendants our attention was called to a distinction between provisions for the payment of debts and provisions for the payment of legacies; and it was rightly claimed that a testator cannot be supposed to have any anxiety in respect to the payment of creditors, because the law will take care of them irrespective of the provisions of the will. But although the distinction is correct it has no force as applied to this case, for the reason that the testator's sole object in providing for the payment of the debts was to adjust and equalize the legacies as between the beneficiaries, and not to benefit the creditors at all. And this suggests another consideration which furnishes strong support for the construction of the will we have adopted.

The scheme of the will as it lay in the mind of the testator plainly appears. There were two classes of beneficiaries equally near to the donor, and two classes of property well adapted to the wants of each class. On the one hand were the widow and the two daughters and the Fair street dwelling houses; and on the other hand were the three sons, who had always been associated with the testator, their father, in business, and the Chapel street store and store property, where the business had always been carried on, and was then being carried on by the sons. This division was most natural, and any other would have been most unnatural. The difficult problem was to equalize the gifts, if made in that way. The great bulk of the property belonged to the Chapel street store, and the debts too were connected with that business.

While the testator might not have designed any exact equality, yet a very fair division seemed practicable by exonerating the Fair street property entirely from the debts, which could be accomplished by imposing the burden wholly upon the Chapel street property to be taken by the sons.

The codicil executed in 1884 contains nothing that can impair in the least the argument for the plaintiffs, but on the contrary it materially strengthens it. After adopting the scheme referred to, and after the original will was executed, the testator was compelled to meet a very heavy obligation arising from his being surety for another on a bond. To meet this he was under the necessity of putting an additional mortgage of seven thousand five hundred dollars on the Chapel street store. But, having obtained some security for this obligation, he thereby became the owner of a house and lot in West Haven, which the codicil devised to his sons, in addition to the Chapel street property first given to them. Why was this last gift made? His own explanation suggests the answer. Manifestly because the burden on the Chapel street property had been so greatly increased. But why compensate the sons on this account if they were not required to pay the *additional* as well as the *original* debts? It seems certain that the testator fully believed that he had imposed the burden of paying the debts upon his sons. And he still leaves the burden on them without any change, for the codicil concludes by reaffirming the will as first made, and the original scheme remains the same in substance. The fact that no allusion was made to the mortgage on the Fair street property does not change the proper interpretation of the testator's acts or of his will in the slightest degree. The testator knew that the money raised by that mortgage had gone for the benefit of the sons, and while on the one hand it increased by so much the debts they were to pay, on the other it increased equally their means of paying; and as burden and benefit were equal it required no explanation and no different adjustment. The obligation originally imposed still remained on the sons if they took the property to pay *all*

*the debts*, and to avoid all doubt, it was re-imposed by affirming the original will after all the changes that had taken place.

That the questions in this case are close and difficult ones to determine, and that our conclusion has been reached after much hesitation, we frankly concede. But, in view of the considerations suggested, we are of the opinion that it fully accords with the intention of the testator to interpret his will as if it contained after the word "debts," in the clause under discussion, the omitted words "by them," thus imposing a personal obligation on the sons to be made binding in case of their acceptance of the legacy. And that there was such acceptance is placed beyond all controversy by the finding, which is as follows:—" And thereupon, upon his " (the testator's) " death, the defendants, the three sons, with full knowledge of the existence and contents of said will and its codicil, took possession of said store and the business, and said store property, and the Campbell Avenue property in West Haven, and all of the property devised and bequeathed to them by said will and codicil, as their own property, and thereafter took exclusive control of said business, and continued to run it as their own exclusive and absolute property, and have continued so to do down to the present time, claiming to own all of said property absolutely and in fee simple."

Upon the construction of the will which we have adopted, it will also follow that the defendants will not be entitled to a new trial, even though the rulings of the trial court in admitting or rejecting evidence were erroneous, if it also appears that the facts to be proved or disproved by such evidence could not change such construction or materially affect the result.

Clearly of this class were the facts, that the daughters did not know of the will till after the testator's death; that he told the defendants not to tell them; that the testator's health was extremely poor, and that the attention of the court was called to the feebleness of the signature. The evidence however of the daughters' ignorance as to the

will was offered by the plaintiffs and received by the court without any objection at the time on the part of the defend-ants. But to obviate the supposed force of the evidence, the defendants offered to show that the testator requested them not to tell their sisters in regard to the will, which evi-dence the court would not receive; and they now assign for error both the admission of the evidence not objected to, and the rejection of the evidence offered in reply.

Now, as already suggested, the ignorance of the sisters in regard to the will, considered as an independent fact, could have no possible bearing upon the question of construction, nor upon the question as to the defendants' knowledge of the will, nor could the offered explanation affect either of those questions. Had an intentional concealment been charged in order to affect the credibility of the witness, the reason for such concealment might have been admissible in reply. But obviously the plaintiffs were relying upon the truth of what the witness testified to as a part of their case and did not design to impair his credibility. If it implied anything that might have excited the prejudice of the trial judge it certainly could not have affected either of the two controll-ing features of the case which we have mentioned. The knowledge of all the essential facts on the part of the de-fendants was most amply proved. Indeed, counsel for the defendants in their brief complain because the court allowed such particularity of proof when the fact was virtually ad-mitted. It was however relevant to the plaintiffs' case to show that the defendants knew of the will and its contents and had most intimate knowledge of the testator's affairs when they accepted the provisions of the will, and the evi-dence offered and received to the effect that the defendants procured the will to be drawn and were present when it was drawn and when it was executed, were most pertinent to show such knowledge. If there was an unnecessary amount of pertinent evidence allowed when the fact was even ad-mitted, that is no reason why there should be another trial, but directly the contrary.

The defendants also complain because they were not per

mitted to show by oral evidence the actual intent of the testator in regard to the payment of the mortgage debt now in question and also their own understanding in regard to it. The law in such a case as this commits the intent of the testator to the written language contained in the will, aided, if it may be, by the surrounding circumstances, but such intent was never committed to the keeping of the defendants and cannot be interpreted by their own understanding of the matter. There are a few exceptional cases where the specific intent of the testator may be shown by extrinsic evidence. This very clearly is no such case.

It is also assigned for error that the court excluded an answer to the question asked of one of the defendants, how long it had been the intention of the testator to give the store property to the defendants. The ostensible reason for this evidence was by way of reply to the evidence offered by the plaintiffs as to the feebleness of the signature of the testator in executing his will. The evidence in chief, to which this was an attempted reply, was doubtless offered to lay the foundation for the inference that the defendants knew all about the will because the whole transaction was at their suggestion; but the reply assumes, contrary to the fact, that the issue was one of undue influence or want of capacity to make a will. There can be no such issue in this action. Both parties affirm the validity of the will in every respect.

There was no error in the judgment complained of.

In this opinion the other judges concurred.