NELLIE S. JACKSON, EXECUTRIX, *vs.* MARY LOUISE BEVINS ET AL.

Third Judicial District, New Haven, June Term, 1901.
ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

The debts of a testator, including mortgage debts created by him after the execution of his will, are to be paid, primarily, from his personal property, unless the will otherwise directs.

A legatee who elects to take a beneficial interest under the will cannot set up any right or claim of his own, even if otherwise legal and well founded, which will defeat or in any way prevent the full effect and operation of every part of the will.

A testator, after devising a portion of his land to his wife, bequeathed to her $1,500, which he supposed he owned but which in fact already belonged to her, upon condition that she should erect an $800 monument and pay his just debts therefrom. *Held* that if she elected to claim the land she must treat the $1,500 as a part of his estate and use it, so far as it would go, as the will directed.

Argued June 11th—decided July 23d, 1901.

SUIT to determine the construction of the will of John Jackson of Ansonia, deceased, brought to the Superior Court in New Haven County and reserved by that court, *Ralph Wheeler, J.,* upon the facts stated in the complaint, for the consideration and advice of this court.

The testator died on the 12th day of August, 1899. He left a will properly executed to pass real and personal property, which after his death was duly proved and established in the Court of Probate. The plaintiff, who was his widow, was named in the will as the executrix. She qualified and entered upon her duty as such. She brings this complaint

asking for a construction of certain parts of the will,* and for advice in the performance of her duties.

* "I, John Jackson, of the city of Ansonia, in the State of Connecticut, being of sound and disposing mind and memory, do make, publish, and declare this my last will and testament, hereby revoking any former will and codicil by me made, in manner and form following, that is to say: .

"*First.* I will and direct·that my just debts be paid, as hereinafter provided for.

"*Second.* I give, devise, and bequeath to my wife, Nellie S. Jackson, my homestead, where I now reside in said Ansonia, being a lot or tract of land bounded westerly by land of Charles Evans, land of Edward Van Riper, and land now or lately of the estate of Terry Lavine; northerly, by land of Charles Johnson and by my own land; easterly and southerly, by highway called High Street, together with all of the buildings thereon; also, the house and lot situated in said Ansonia on the westerly side of said High Street, next northerly and adjoining said homestead lot, bounded southerly and westerly by my said homestead lot; and northerly, by my own land; and easterly, by said High Street, to have and to hold the real estate aforesaid unto her and her heirs forever.

"I also give, devise, and bequeath to my said wife all of my household furniture, furnishings, wares, and belongings situated in my dwelling-house and used in housekeeping by my family, except the following, viz.: my black walnut secretary, my marble clock and the two side ornaments belonging therewith, and my two ebony cabinets, which said secretary, clock, ornaments, and cabinets I give to my daughter, Mary Louise Bevins, absolutely and forever; and except, further, my sword and my gold headed cane, and my books, as hereinafter provided, to have and to hold said furniture, furnishings, wares, and belongings, except as aforesaid, to her and her heirs forever.

"I also give to my said wife the contents of my barn upon my said homestead, and all of my tools and trappings situated and used by me upon and about my said homestead, absolutely and forever.

"*Third.* I give, devise, and bequeath to my said wife all of my insurance money in the Odd Fellows' Funeral Aid Association of the State of Connecticut, and all moneys that may be due from said association upon and in consequence of my decease and by reason of my membership therein, subject, however, to the following condition, to wit: that my said wife shall erect or cause to be erected upon my burial lot in Grove Cemetery, so-called, in said Ansonia, a suitable monument and appurtenances, to be selected by my said wife, and to cost, at a reasonable price therefor, about eight hundred dollars, and also that she shall defray therefrom all of my funeral expenses, and the expense of settling my estate, and pay all my just debts therefrom, except, however, the mortgage debt hereinafter mentioned. Also, that she shall

It appears by the allegations of the complaint, all of which are admitted to be true, that the testator at the time he made his will, and thereafter up to the time of his death, was the owner of four pieces of land in Ansonia. Two of these pieces he devised to his wife by the second paragraph of the will. The other two pieces were devised to his daughter, now Mrs. Bevins, by the fifth paragraph of the will, charged with the payment of the debt secured by a mortgage on one of them.

He had been in his lifetime, and was at his death, a member in good standing of the Odd Fellows Mutual Aid Association. By the rules and laws of that association his wife was entitled to receive, at his death, from the Association, the sum of $1,500. This sum has since his death been paid

pay from said moneys the sum of one hundred dollars to the Pine Grove Cemetery Association, of said Ansonia, which said sum of one hundred dollars I give to said cemetery association in trust and to its successors in the care and control of said cemetery forever, for the uses and purposes following, to wit: to expend the income therefrom, or so much thereof as may be necessary, in the proper care and preservation of said burial lot.

"*Fourth.* I give to my grandson, Louis Jackson Braddock, my sword and my gold headed cane, to have and to hold the same to him and his heirs forever. Also, all my library books, absolutely and forever.

"*Fifth.* I give, devise, and bequeath all of the rest, residue, and remainder of my estate of whatever kind and wherever situated, to my said daughter, subject, however to and upon the following condition, to wit, that my said daughter shall assume, pay, and discharge any and all mortgage indebtedness which I may owe at my decease, and secured by a mortgage or by mortgages upon any of my real estate included in said rest, residue, and remainder bequeathed to her aforesaid; and I hereby charge upon said rest, residue, and remainder of my estate the payment of such mortgage indebtedness aforesaid, to have and to hold the same, subject to such condition aforesaid, unto her and her heirs forever.

"*Fifth.* I nominate and appoint my said wife to be my executrix of this my last will and testament, and I request that she be not required to give bonds as such.

"*Sixth.* All of the bequests herein given to my said wife are given to her in lieu of dower and in lieu of any and all other interest in or claim upon my estate.

"In witness whereof I have hereunto set my hand and seal, this 19th day of September, 1895.

"JOHN JACKSON (seal)."

over to her. The money never belonged to the testator. It is, however, the same money which he undertook to dispose of by the third paragraph of the will, apparently supposing it was his own.

The articles specifically devised to Louis Jackson Braddock have been delivered to him.

*William H. Williams,* for Nellie S. Jackson, individually and as executrix.

*Robert L. Munger,* for Mary Louise Bevins.

ANDREWS, C. J. So far as appears, the testator, at the time he made his will, owed no other debt than the one secured by a mortgage on the land devised to Mrs. Bevins. At later dates he incurred two other debts, each to the Ansonia Savings Bank, one for $2,000, the other for $1,000, and each secured by several mortgages on the two pieces of land devised to his wife. It is the existence of these latter debts which gives rise to the doubts sought to be resolved by this action.

Primarily the debts of any deceased person are payable out of his personal property. His real estate is not to be taken for such purpose till the personalty is exhausted. Woerner on Adm. 1093; 4 Kent's Comm. *420. It is "a well-known rule, that, as between the real and personal representatives of all persons deceased, the personal estate in the hands of the executor or administrator is the primary and natural fund, which must be resorted to in the first instance for the payment of debts of every description, contracted by the testator or intestate." 3 Williams on Exrs. (6th Amer. Ed.) [1693]. Until quite recently our own statutes did not permit the real estate of a deceased person to be taken for his debts, except upon a finding that the debts exceeded the amount of the personal property, and then only so much of the real estate was to be taken as was sufficient to make up the difference. *Shelton* v. *Hadlock,* 62 Conn. 143; *Coe's Appeal,* 64 id. 352; *Dorrance* v. *Raynsford,* 67 id. 1. Thus, when a testa-

tor directs the payment of all his just debts, it is taken that the debts are to be paid from his personal property, unless he makes other provision, although the debts are secured by mortgage. *Plimpton* v. *Fuller*, 11 Allen, 139, 140; *Gould* v. *Winthrop*, 5 R. I. 319. In such case, if the mortgagee resorts to the land, the devisee may have reimbursement from the personal property of the testator. *Hewes* v. *Dehon*, 3 Gray, 205; 3 Williams on Exrs. (6th Amer. Ed.) [1694].

In the present case the testator expressly made one of the pieces of land which he devised to Mrs. Bevins subject to the mortgage thereon. She takes that land subject to the burden on it. She must pay that debt.

By the third paragraph of the will the testator undertook to dispose of the fund which came from the Odd Fellows Funeral Aid Association, as though it was a part of his own estate. In fact, it did not belong to him at all. It belonged to his wife. In this court she did not expressly claim that money as her own, nor did she expressly renounce it. Apparently she leaves it to the operation of the law. She does, however, claim the land devised to her by the second paragraph of the will; and as she does that, the law is clearly so that she cannot set up any claim to that money. Having elected to take a beneficial interest under this will, she cannot set up any right or claim of her own, even if otherwise legal and well founded, which will defeat, or in any way prevent, the full effect and operation of every part of the will. This rule has been discussed at some length by this court quite recently, and applied in several cases. *Farmington Savings Bank* v. *Curran*, 72 Conn. 342; *Coe's Appeal*, 64 id. 352; *Carter's Appeal*, 59 id. 576, 587.

By the law as there shown, it is the duty of the plaintiff, in the settlement of Mr. Jackson's estate, to treat that $1,500 as his property. It is her duty to follow, so far as may be, his directions. She should erect a monument in the cemetery and on the lot which he named. It should be a monument suitable to the character and family of the deceased, appropriate to the place where it is set, and adapted to perpetuate his name and memory. If it does this, even if it

does not cost the entire $800, we think the purposes of the testator in this provision will be fully carried out. As to the matter of the cost the widow is to some extent given a discretion. The sum of $800 seems to be mentioned rather by the way of general description than as a fixed price.

She should pay the sum of $100 to the Pine Grove Cemetery Association of Ansonia, to be used as is set forth in the will. She must also pay the funeral expenses, and the expenses of settling the estate. The balance of the sum of $1,500, whatever it may be, she should apply to the payment of the debts of the testator. That is what the testator directed. At the time he made his will, all his debts then existing could have been paid from that money. After that time he incurred other debts to an amount much greater than that sum, and which cannot be paid therefrom. He did not change his will. The law charged these new debts on his general personal estate. They were evidenced by his notes and secured by mortgages on the two pieces of land devised by his will to his wife. It would, therefore, be the duty of his executrix to discharge them. *Turner* v. *Laird*, 68 Conn. 198, 200. It may well be presumed that he allowed his will to remain unaltered in reliance upon this rule of law. After all this is done, so much of the personal property as is left falls into the rest and residue of the estate, and goes to Mrs. Bevins.

To recapitulate briefly: It is the duty of Mrs. Bevins to pay the mortgage on the land devised to her. The plaintiff is entitled to have the lands devised to her free from any mortgage lien. The $1,500 from the Odd Fellows Association must be treated as a part of Mr. Jackson's estate, and applied, so far as it goes, as he directed. The remaining portion of his debts not then paid, must be paid from the other personal property.

The Superior Court is advised to render judgment in accordance with the views herein expressed.

No costs will be taxed in this court in favor of either party.

In this opinion the other judges concurred.