CHARLES H. HIGINBOTHAM ET AL. *vs.* WILBUR G. MANCHESTER, EXECUTOR (ESTATE OF GEORGE H. FITCH).

First Judicial District, Hartford, January Term, 1931.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued January 9th—decided April 6th, 1931.

*A. Storrs Campbell,* for the appellant (plaintiff).

*William B. Gumbart,* with whom was *Mary E. Manchester,* and, on the brief, *Harrison Hewitt,* for the appellee (defendant).

MALTBIE, C. J.   George H. Fitch died in this State in 1929, leaving a will probated here in which he made certain bequests of personal property and money; devised the use, income, rents and profits of certain real estate situated in Massachusetts to a sister for her life, with a gift over at her death to her sons in fee; devised certain real estate in Connecticut, with certain personal property contained in the buildings upon it, to his wife for her life, with a gift over at her death to certain nephews in fee; and provided that "after the payment of my just debts and funeral expenses and the expenses of settlement of my estate, including in the latter the cost of said monument, and the satisfaction of the foregoing gifts," the residue of his estate should be divided among certain named beneficiaries.   At his death the Massachusetts real estate was subject to three mortgages to a savings bank in that State.   Two of these, one for $1300 and the other for $500, were made by former owners of the land and were not assumed by Mr. Fitch in the deed he received on his purchase of the property; but he did contemporaneously with it execute a certain instrument in which he guaranteed to the bank, its successors and assigns, full payment of the note for $1300 secured by one of the mortgages, and full performance of all the mortgagor's agreements, and agreed to pay all taxes assessed upon the property.   Whether or not he executed a similar instrument as to the $500 mortgage does not appear in the stipulated facts.   The third mortgage was made to the bank by Mr. Fitch himself.   At the time of his death there was in effect in Massachusetts a statute which provided that: "A

specific devise of real estate subject to a mortgage given by the testator, unless the contrary shall plainly appear by his will, shall be deemed to be the devise of the interest only which the testator had at the time of his decease in such real estate over and above such mortgage, and if the note or obligation of the testator secured by such mortgage be paid out of his other property after his decease, the executor of his will or the administrator with the will annexed of his estate shall, at the request of any person interested and by leave of the probate court, sell such real estate specifically devised for the purpose of satisfying the estate of the testator for the amount so paid, together with the costs and expenses thereof." General Laws of Massachusetts, Chap. 191, § 23.

The executor presented his preliminary account to the Court of Probate in which he stated that all claims against the estate had been paid and that there remained on hand for distribution personal property to an amount greatly in excess of that due upon the mortgages. This account was accepted by the Court of Probate and from its acceptance the devisees of the remainder interests in the Massachusetts property have appealed upon the ground that it was the duty of the executor to pay the notes secured by the three mortgages. It is stipulated that the bank did not present any claim to the executor for the payment of the indebtedness evidenced by the several notes within the time limited for presenting claims but that the appellants have requested the executor to pay them and he has refused. It is not questioned that the appellants are entitled to secure an adjudication at this time of their right to have the notes paid by the executor nor is it contended that the failure of the bank to present a claim for such payment is a defense to this action. The case is reserved for our advice as

to whether or not the executor is under a duty to pay each of the three notes.

In the case of a devise by a testator resident in this State of land here situated, it is settled that the executor is under a duty, unless a contrary intent is expressed in the will, to pay a debt secured by a mortgage given by the testator upon the real estate. *Bishop* v. *Howarth,* 59 Conn. 455, 465, 22 Atl. 432; *Turner* v. *Laird,* 68 Conn. 198, 200, 35 Atl. 1124; *Jackson* v. *Bevins,* 74 Conn. 96, 101, 49 Atl. 899; *Bulkley* v. *Seymour,* 74 Conn. 459, 461, 51 Atl. 125; *Beard's Appeal,* 78 Conn. 481, 62 Atl. 704; *Jacobs* v. *Button,* 79 Conn. 360, 65 Atl. 150; *Bridgeport Trust Co.* v. *Fowler,* 102 Conn. 318, 328, 128 Atl. 719. The basis of the doctrine is the presumed intention of the testator, and in the earlier cases cited, where the will before the court contained express directions for the payment of debts, this intention was largely rested upon this provision. See also *Brainerd* v. *Cowdrey,* 16 Conn. 1, 7. In *Bulkley* v. *Seymour, supra,* however, while the opinion of the court does not expressly so state, an examination of the record and briefs discloses that there was in the will under consideration no direction for the payment of debts and the case was attempted to be distinguished upon this ground; but the court applied the same rule, saying that a devise of real estate encumbered by a mortgage "prima facie imports an intention that such debts shall be satisfied out of the general personal assets." The application of this presumed intention to the will of a testator amounts in effect to reading into it a certain provision which, had he had the matter in mind, he would have expressly stated. The result is the same as though the devise "had been followed by an express direction that the mortgage upon it should be paid by the executor." *Jacobs* v. *Button, supra,* 364.

Our inquiry must be, does the same presumption of intention apply with reference to the devise of land lying in another State as would apply in the case of a devise of land here situated? Or, to put it another way, is the testator presumed when he made his will to have had in mind the law of this State or the law of the State in which the land is situated? And here it is to be noted that we are not concerned with any question as to the effect of the terms of the will upon the devolution of title to real estate in another State, as we were in *Braman* v. *Babcock,* 98 Conn. 549, 120 Atl. 150; *Clarke's Appeal,* 70 Conn. 195, 39 Atl. 155; and *Bankers Trust Co.* v. *Greims,* 110 Conn. 36, 42, 147 Atl. 290. If we apply the same rule of interpretation in this case as we would if the land were situated in Connecticut, we are merely determining what the terms of the will really are, not attempting to settle their effect upon the title to Massachusetts land. The question before us concerns only the duty of the executor under the will of a resident of Connecticut with reference to the use of personal assets in his possession in the payment of debts of the testator. It is a closely analogous situation to that to which we referred in *Clarke's Appeal, supra,* page 211, where the testatrix died a resident of South Carolina and we said: "The personal representative of Mrs. Clarke rightly sought the direction of the courts of her domicil as to the effect of her will upon the estate for which he was or might become accountable before them. As to that matter the courts of Connecticut could not instruct him. *Russell* v. *Hooker,* 67 Conn. 24 [34 Atl. 711]. This was the subject-matter of the South Carolina action, and the decree rendered is conclusive upon those who were parties to it."

There is undoubtedly some conflict in the decisions as to the law which it will be presumed a testator had

in mind where the property involved lies in another jurisdiction whose law differs from that of the State of his residence. But the weight of authority undoubtedly upholds the view that at least where no question of the devolution of title to real estate is concerned the testator will be presumed to have had in mind the law of the State of his residence. *Harrison* v. *Nixon,* 34 U. S. (9 Pet.) 483, 503; *Jacobs* v. *Whitney,* 205 Mass. 477, 480, 91 N. E. 1009; *Lincoln* v. *Perry,* 149 Mass. 368, 373, 21 N. E. 671; *Keith* v. *Eaton,* 58 Kan. 732, 735, 51 Pac. 271; *Ford* v. *Ford,* 80 Mich. 42, 51, 44 N. W. 1057; 1 Alexander on Wills, § 272; 2 Wharton on Conflict of Laws (3d Ed.) § 599a; 2 L. R. A. (N. S.) 443. Professor Minor in his work on Conflict of Laws, § 145, note 4, makes one very pertinent suggestion: If the law of the State where the property is situated is to be considered as in the mind of the testator, and he owns property in several States having differing laws, the improbable conclusion would follow that, in his references in the same words to the same situation with reference to the various properties he intended differing results. Thus in the case before us, although the testator used almost identical language in the two devises of real estate, if that situated in Connecticut had been subject to a mortgage, it would have been the duty of his executor to discharge it but, if he is presumed to have had in mind the law of Massachusetts with reference to real estate there situated, it would follow that he did not intend to have any mortgages upon it discharged; such a result would be hardly reasonable.

While we have not had this precise question before us, in *New Haven Trust Co.* v. *Camp,* 81 Conn. 539, 71 Atl. 788, *S. C.,* 83 Conn. 360, 76 Atl. 1100, we considered a closely analogous situation with reference

to a deed of Connecticut land executed in New York, and we held that it was presumed that the parties had in mind the law of New York, saying (81 Conn. 543) that the execution of the deed there "could not make the conveyance avail to pass title under the law of Connecticut. It could make it avail to establish a relation between the parties with respect to the land, out of which, by force of subsequent events, important rights in respect to it might arise." Our conclusion is that the testator must be presumed to have had the law of Connecticut in mind when he executed his will and that, with reference to the mortgage upon the Massachusetts land executed by him, it is the duty of the executor to discharge the debt out of the general personal assets in his hands.

We do not anticipate that any difficulty will arise out of the concluding portion of the Massachusetts statute, where it is provided that, in those situations to which the statute applies, if the debt is paid out of assets of the estate other than the mortgaged land the executor is required, at the request of any person interested and by leave of the Court of Probate, to sell the land to satisfy the estate for the amount so paid. Our construction of the will will no doubt be accepted by the courts of Massachusetts. *Uterhart* v. *United States,* 240 U. S. 598, 603, 36 Sup. Ct. 417; *In re Trufort,* L. R. 36 Ch. Div. 600, 611; *Ford* v. *Ford,* 80 Mich. 42, 51, 44 N. W. 1057; 2 Wharton on Conflict of Laws (3d Ed.) p. 1357; 1 Woerner, American Law of Administration (3d Ed.) p. 553. The effect will be to read into the will a requirement that the executor pay the mortgage and it will thus, in the words of the statute, "plainly appear" that a result contrary to its provisions was intended by the testator, so that it would not apply.

A different situation is presented by the mortgage

the payment of which was guaranteed by the testator. This was upon the land when he bought it, and hence it does not fall within the terms of the Massachusetts statute, which applies to a specific devise of real estate subject to a mortgage "given by the testator." The reason for thus limiting the statute is obviously because no statute was necessary to accomplish the purpose intended as regards a mortgage upon land specifically devised which was in existence when the testator purchased it; for under the law of Massachusetts as under that of other jurisdictions an executor is under no duty to discharge such a mortgage, unless a contrary intent appears from the terms of the will. *Hewes* v. *Dehon,* 69 Mass. (3 Gray) 205, 208; *Andrews* v. *Bishop,* 87 Mass. (7 Allen) 490, 493; *Creesy* v. *Willis,* 159 Mass. 249, 251, 34 N. E. 265; *Campbell* v. *Campbell,* 30 N. J. Eq. 415, 416; *In re Hunt's Petition,* 19 R. I. 139, 32 Atl. 204; *Cumberland* v. *Codrington,* 3 Johns. Ch. (N. Y.) 229, 272; *Sunderland* v. *Harrison,* 86 Ill. 363. In some of these decisions it is stated that this rule applies even where the testator has personally assumed payment of the mortgage. The leading case in this country to lay down this rule is *Cumberland* v. *Codrington, supra,* where Chancellor Kent extensively reviewed the English decisions and came to the conclusion that (p. 256): "It seems not to be sufficient that the stranger, who takes the estate subject to a debt, should become legally responsible to the creditor, unless that responsibility be accompanied with evidence of an *intention* to assume the debt, as a personal debt of his own, and detached, as it were, from the land." But later he says (p. 272): "The result of the cases seems to be, that as to wills, the testator may, by express directions, charge such an incumbrance upon his personal assets, or even without express words, he may do it

by dispositions and language that are tantamount; as if, for instance, the continuance of the charge primarily on the land would be repugnant to some of the provisions in the will and defeat them." In a note found in Vol. 1, Part 2, White & Tudor, Leading Cases in Equity, 4th American Edition, page 901, the cases are also reviewed and the conclusion reached (p. 926): "The weight of authority, therefore, seems to be, that the personal estate is not primarily liable, unless the testator has not merely made himself responsible for the payment of the mortgage, but has made the debt directly and absolutely his own, or has, in some other way, manifested an intention to throw the burden on the personalty [instead] of the land." In some of the decisions, there is a notable failure to distinguish between the situations created by the descent of mortgaged land and those arising out of its devise. In the case of a devise the primary question, as in all similar cases, must be as to the intent of the testator. *Hoff's Appeal*, 24 Pa. St. 200, 204; *Thompson* v. *Thompson*, 4 Ohio St. 333, 351. The distinction between the two situations is particularly apparent in the light of *M'Learn* v. *M'Lellan*, 35 U. S. (10 Pet.) 625, where it is said that even though the owner of the land should give another mortgage to secure the original debt this would not of itself be enough to exonerate the lands; "And this is the well established rule on this subject. If the contract be personal, although a mortgage be given, the mortgage is considered in aid of the personal contract; and, on the decease of the mortgagor, his personal estate will be considered the primary fund, because the contract was personal; but if the estate descend to the grandson of the mortgagor, then the charge would be upon the land, as the debt was not the personal debt of the immediate ancestor. And

so, if the contract was in regard to the realty, the debt is a charge on the land. It is in this way that a court of chancery, by looking at the origin of the debt, is enabled to fix the rule between distributees." But it is hardly to be supposed that the· nature of the provision a testator would make to carry out his intent in such a situation would be determined by the rule which equity would adopt to fix the rights between the distributees of an intestate estate.

The note we are now considering was payable on demand and action upon it might have been brought at any time without previous notice or demand. General Laws of Massachusetts, 1921, Chap. 107, § 93; *Cosmopolitan Trust Co.* v. *Leonard Watch Co.*, 249 Mass. 14, 22, 143 N. E. 827; *Stevens* v.· *Berkshire Street Ry. Co.*, 247 Mass. 399, 401, 142 N. E. 59; *Goodfellow* v. *Farnham*, 239 Mass. 590, 132 N. E. 363; 5 Uniform Laws Anno. (Negotiable Instruments) p. 480. The guarantee was absolute in its terms and the testator became liable to pay the note without demand upon the maker or notice of default. *Crocker* v. *Gilbert*, 63 Mass. (9 Cush.) 131, 134; *Parkman* v. *Brewster*, 81 Mass. (15 Gray) 271, 272; *City Savings Bank* v. *Hopson*, 53 Conn. 453, 5 Atl. 601; *Beardsley* v. *Hawes*, 71 Conn. 39, 40 Atl. 1043; Arnold on Suretyship & Guaranty, § 22. The obligation upon the testator to discharge the indebtedness represented by the note was well within the scope of the debts which he directed to be paid before the residue of the estate should be distributed. That direction is broad and indicates an intention that all his debts shall be paid, "whether secured by mortgage or unsecured." *Bishop* v. *Howarth*, 59 Conn. 455, 465, 22 Atl. 432. As we have seen, he must be presumed to have intended that the mortgage upon the property which he had himself given should be paid by his executor, and

it is hardly reasonable to suppose that he would have had that intention and not a like one as to the mortgage the payment of which he had guaranteed. Moreover, payment of the mortgage might be required by the bank at any time, and unless the note secured by it was discharged by the executor, the life tenant might be required, in order to save her estate, to discharge it; it is true that, if she did so, she would be entitled to the benefit of the lien of the mortgage upon the real estate; 1 Thompson on Real Property, § 740; but it seems hardly likely that the testator meant to qualify his gift by putting her in such a position that she might be under an obligation to supply the money to pay it off in the first instance. It is our conclusion that the will before us manifests an intention on the part of the testator that the executor should discharge from the personal estate the mortgage upon the property which he had guaranteed, and that it is his duty to do so.

With reference to the other mortgage upon the Massachusetts real estate which existed at the time the testator purchased the land the stipulation does not sufficiently inform us of the facts to justify an answer to the question addressed to it.

We advise that it is the duty of the executor to discharge from the personal assets in his hands the indebtedness secured by the mortgage upon the land which the testator made and that secured by the mortgage the payment of which the testator guaranteed; but the question addressed to the other mortgage we do not answer.

No costs will be taxed in this court to either party.

In this opinion the other judges concurred.