DONALD G. ROBERTS' APPEAL FROM DOINGS OF COMMISSIONERS (ESTATE OF RUTH R. LACOMB)

SUPERIOR COURT     WINDHAM COUNTY     FILE No. 9186

Memorandum filed April 7, 1950.

William P. Barber, of Putnam, for Appellant.

Samuel B. Harvey, of Willimantic, for Appellee.

KING, J. The appellee (hereinafter referred to as the claimant), a carpenter by trade, married the decedent June 1, 1946. At that time he was sixty-nine years old and childless. The decedent had been previously married and the present appellant is her son.

Prior to the marriage it was decided to build a new house, to be occupied as a home, on a lot of land owned by the decedent on Prospect Street in Danielson. Work on this house was commenced before, but it was not completed until after, the marriage. It was built on the rear of the lot known as 13 Prospect Street, which already had one house on it, and the new house was known and designated as 13½ Prospect Street.

Under an agreement which the claimant made with the decedent prior to the marriage, he was to furnish the materials and labor for the construction of the house, and was to be repaid by the decedent for his actual disbursements for material and labor, and also for the fair value of his own labor, as soon as it was reasonably convenient for her so to do.

At the time of this agreement the claimant understood that the decedent owned eight houses, some or all of which were subject to a $2000 mortgage to the Danielson Federal Savings and Loan Association, and it was contemplated by the parties that the decedent would sell off these houses as favorable opportunities so to do presented themselves, and that from funds so obtained the claimant would be paid. In fact the decedent did sell four of these houses during her lifetime, and after the sale of the first she paid off the aforesaid mortgage (June 10, 1946), receiving a release thereof. She then offered to make a payment to the claimant on the amount owed him, but he refused because, as he told her, the house had not then been completed, and he thought it best to wait until the whole cost of construction could be known.

The claimant did not know until after her death that the decedent had substantial assets other than the eight houses. At the time of the marriage he had about 7500 in cash and about $1800 on deposit in a bank in Springfield, Massachusetts.

At the beginning the decedent kept in her own handwriting an account of the materials purchased for the construction of the house, but she became ill and no further entries were made after two ("Kennedy" and "Youngs") in 1947.

On March 24, 1947, she executed a will. This had been drafted by Attorney T. Emmett Clarie after a conference with the decedent, about a week before, in the course of which he received his instructions from her. The claimant drove her to Attorney Clarie's office, but was not present at the conference and did not know anything of the provisions of the will until after his wife's death in June of 1947. In discussing the provisions to be inserted in the will, the decedent told Attorney Clarie that her husband had put considerable labor and materials into the house at 13½ Prospect Street and that she wished to give the property to him to reimburse him for the time, labor and materials which he had put in.

The claimant presented a claim against his wife's estate (which was fully solvent) for (1) materials furnished by him for the house of the cost of $3850.87 and (2) labor performed and furnished by him for the house of the price and value of $567.50. The total claim was $4418.37. This claim was disallowed and commissioners were appointed under General Statutes § 6996 upon application of the claimant. After hearing held on March 29, 1948, the commissioners allowed the claim in the amount of$3850.87.

From the doings of the commissioners the appellant took this appeal as the son of the decedent and a residuary beneficiary under the aforesaid will.

Paragraph second of the will devised the house and lot at 13½ Prospect Street to the decedent's husband, outright and absolutely, except that under paragraph sixth the house and lot were devised to the decedent's son if, but only if, the husband failed to survive the testatrix. The only other specific gifts were the specific devise to the son of another house and lot at 15 Prospect Street (paragraph third of the will) and the specific bequest to the son of such United States war savings bonds as were registered jointly in the names of the testatrix and her said son (paragraph fourth of the will).

All the rest of the decedent's estate was given in trust (paragraph fifth of the will), under the basic terms of which the net income was to be paid to the husband during his lifetime, and the corpus, ultimately, to the son. Other details of the trust provisions are not material to the decision of this appeal.

The inventory and appraisal of the decedent's estate showed a total appraised value of over $55,000.

The total appraised value of the war savings bonds specifically bequeathed to the son was $2568.80, and of the house specifically devised to the son was $5500. In addition was a bank account in the names of the decedent "and or" her husband, in the Danielson Federal Savings and Loan Association, in the amount of $3645.12. According to the testimony, the claimant has received one-half of this account ($1822.56) and admittedly no part of it represented his money nor did he know of its existence until after his wife's death.

Having in mind the age of the claimant, the fact that the decedent had the son by the former marriage, and the further fact that the house was to be erected on the decedent's land, it is more probable than not that the claimant's testimony as to the agreement is true and that a debtor-creditor relationship as claimed existed between them. This agreement of course overcomes the presumption of a gift flowing from the relationship of the parties and their joint membership in the same household. *Cotter* v. *Cotter*, 82 Conn. 331, 332; *Reynolds* v. *Reynolds*, 121 Conn. 153, 156.

The first defense in effect amounted to a general denial, but as previously pointed out the agreement is found proven and the amounts claimed are found to be correct, both as to materials and labor.

There remain the special defenses.

The first special defense ("second defense") is a plea of payment for the materials and a denial of any agreement to pay for the labor. As far as actual reimbursement of the claimant during the decedent's lifetime is concerned, there was no evidence of this and the defendant failed to sustain his burden of proof. The claimant proved that the agreement extended to his reimbursement for the fair value of his own labor as well as for amounts by him expended for labor by others.

The second and third special defenses ("third defense" and "fourth defense") in effect respectively claim (1) that the devise of the house and lot is a satisfaction of the indebtedness, if there

was any; and (2) that in any event this is so because the claim-ant's admitted acceptance of the house constituted an election to take the devise in lieu of the claim and in satisfaction of it.

Under our law the acceptance of the devised property would in no event operate as a satisfaction of the claim unless (1) such an intention on the part of the decedent appears in the will, and (2) the value of the devise at least equals the amount of the debt, and (3) the beneficiary accepts the devise. Cleveland, Hewitt & Clark, Probate Law and Practice, § 459; Nobbs & Stevenson, Connecticut Probate Law, § 447; *Brainerd* v. *Cowdrey*, 16 Conn. 1, 7; *Lord* v. *Lord*, 23 Conn. 327, 331, 334; *Smith* v. *Marshall*, 1 Root 159, 161. See also, *Higinbotham* v. *Manchester*, 113 Conn. 62, 66; General Statutes §§ 6953 and 6968; and notes in 86 A. L. R. 6, 17, 18, 23, 26, 29 and 36. And there is considerable authority to the effect that the rule does not apply to a devise of realty, as distinguished from a legacy of personal property (86 A. L. R. 36), nor where the indebtedness to be satisfied is unliquidated (86 A. L. R. 26), nor where, as here, the will contains a direction to pay the just debts of the decedent. 86 A. L. R. 23.

Here the claimant has accepted the property specifically devised to him and, indeed, has sold it and taken the proceeds. While he claimed that its value was less than the amount actually owed him (which he claimed to be in excess of his claim as actually presented because he was unable to find the necessary supporting data to make his claim cover his total expenses, disbursements and labor), the true amount of the testatrix's indebtedness to him cannot, as of the date of her death, be considered as in excess of the amount of the claim presented, which was $4418.37. The appraised value of his specific devise was $5500 and upon sale of the property by the claimant it brought $7500. Either figure is far in excess of his claim. It thus appears that the second and third conditions of the foregoing rule are fulfilled. It remains to consider the first.

It is quite obvious why the intention of the testatrix that the gift be in satisfaction of the legacy must fairly appear from the will itself. *Bennett* v. *Packer*, 70 Conn. 357, 360; *Spurr's Appeal*, 116 Conn. 108, 111. If the law were otherwise the beneficiary might accept the gift and then afterwards find himself bound by evidence, such as that offered here through Attorney Clarie, as to the actual intention of the testatrix, which theretofore had been quite unknown to him. In this very case there is

no claim that the claimant heard any of the conversation in Attorney Clarie's office, and the evidence is strong that the testatrix discussed her affairs very little with her husband, told him little about her property or the size of her estate, and nothing about her testamentary intentions or what she had done in her will.

Here there is no intention to be derived from the language of the will that the specific devise of the property was to be in satisfaction of the indebtedness. *Spurr's Appeal*, supra. Indeed if the claimant had happened to predecease his wife (as he might well have done in view of his age) the house would have ultimately gone to the son and the indebtedness would of course have remained due from the wife to the claimant's estate.

The will contains a direction that all just debts be paid. This is inconsistent with the theory that the indebtedness to the claimant was not to be paid as other indebtedness but by the devise of the house. 86 A. L. R. 23.

Since there is no inconsistency between the claimant's positions as a creditor and as a specific devisee, there was no election for him to make. *Reed* v. *Copeland,* 50 Conn. 472, 492; *Walker* v. *Upson,* 74 Conn. 128, 131; *Politzer* v. *Jeffrey, Inc.,* 133 Conn. 605, 606.

In order to avoid misunderstanding it perhaps should be noted that the testatrix did not make clear to Attorney Clarie the fact that she had contracted to reimburse the claimant. She simply expressed to him a desire to reimburse the claimant. Under these circumstances Attorney Clarie made no mention of an agreement in the will nor was there any occasion for him so to do. If the actual, as distinguished from the expressed, intention of the testatrix was contrary to the result reached in this opinion the responsibility is that of the testatrix and not that of Attorney Clarie. The court cannot draw a new will for the testatrix now that it appears that she had in fact entered into a contract with her husband. *Hatheway* v. *Smith*, 79 Conn. 506, 512.

Upon an appeal from the doings of commissioners the whole matter of the claim in question is removed to the Superior Court for a trial de novo. The question to be determined is whether the claim should be allowed at all and, if so, to what extent. *Donahue's Appeal,* 62 Conn. 370, 376, reporter's note. In this case it appears that the whole claim as presented should be allowed, although that part representing the charge for labor appears to have been disallowed by the commissioners.

It should also be stated that the presentation of the case, by each side, including the trial briefs, was excellent.

Judgment may enter allowing the claimant's claim, as of the date of death (§ 7012), in the amount of $4418.37.