THE NEW HAVEN TRUST COMPANY *vs.* THEODORE C. CAMP,
EXECUTOR, ET ALS.

Third Judicial District, Bridgeport, October Term, 1908.

BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, Js.

In the absence of any evidence to the contrary, the attestation clause
of a deed affords prima facie evidence that the instrument was
delivered where it purports to have been witnessed, delivered and
acknowledged.

Under the established principles of private international law, the con-
tractual obligations of parties to each other are to be judged by
that law by which they may justly be presumed to have meant to
bind themselves, unless the instrument expressly provides what
law shall govern.

The question, prima facie at least, is not what did they in fact intend,
but what would naturally have been the intention of sensible per-
sons in their position, had it been directed to contingencies which
escaped their notice.

Parties to a deed executed and delivered in New York, where they were
domiciled, will be presumed to have had in mind the law of that
State rather than the law of Connecticut in which the land lies,
if the former would uphold the conveyance and the latter would
render it void; and that presumption applies, also, to their under-
standing of the meaning and legal effect of the language used in
the deed to describe the nature and extent of the grant.

Such understanding cannot avail to pass a greater interest than that
attributed by our law to the language used, but the conveyance,
in the light of that intention and understanding, may establish a
relation between the parties with respect to the land, out of which,
by force of subsequent events, important rights respecting it may
arise.

Evidence that a father in buying land intended to make a gift of it to
his daughter, and that she in entering into possession intended to
take it as a gift in fee, is admissible as tending to prove that she
held possession under a claim of right, as owner; and as tending to
show that her continued possession for forty years or more, after
the property had been conveyed to her two years later, was equally
adverse in character, evidence that she never saw or read the deed,
or knew of its terms, and that her father never included the prop-
erty among his possessions, is relevant and material, notwithstand-
ing the language of the deed, as construed by the law of this State,
gave her a lesser interest than a fee.

Possession of land taken under a parol gift is adverse against the donor, and if continued for fifteen years establishes a title as against him and all claiming under him.

Argued October 30th, 1908—decided January 22d, 1909.

ACTION of interpleader to determine the equitable owner of a fund deposited with the plaintiff, derived from a sale of land, brought to the Superior Court in New Haven County and heard by *Shumway, J.;* judgment that it belonged to the estate of Stephen Whitney. *Error and new trial ordered.*

*Henry Stoddard,* with whom was *George M. Gunn,* for the appellant (the estate of Caroline W. Baldwin).

*Henry C. White* and *Leonard M. Daggett,* for the appellee (the estate of Stephen Whitney).

BALDWIN, C. J. In 1855, at the request of Caroline W. Suydam, wife of Ferdinand Suydam of New York, and one of several children of Stephen Whitney of New York, her father, who was then seventy-eight years of age, bought a country place named Ivy Nook, situated partly in Hamden and partly in New Haven, Connecticut, for and as a present or gift to her. He paid $11,000 for it and had the deed, which was dated May 19th, 1855, made to himself. Her husband was at this time insolvent, and to secure the property against him and his creditors her father did not convey it to her till 1857, when he and his wife, described as parties of the first part, executed a conveyance of it in which Mrs. Suydam was described as the party of the second part. This he gave to her or to an agent who received it in her behalf. The deed was dated August 4th, 1857, and executed in New York. The consideration stated in it was "natural love and affection" and $1. The operative words of grant were "do grant, bargain, sell, alien, remise, release, convey and confirm, unto the said part of the second

part, . . . to her sole and separate use during her natural life and free and clear from the debts or control of her present or any future husband," and embraced "all the estate, right, title, interest, dower, right of dower, property, possession, claim and demand whatsoever, as well in law as in equity, of the said parties of the first part, of, in, or to" Ivy Nook; *habendum* "unto the said party of the second part, . . . to her sole and separate use during her natural life and free and clear from the debts or control of her present or any future husband; giving and granting to the said Caroline full power to convey or dispose of the said premises in fee simple by Deed, will, or otherwise."

This conveyance was recorded in the Hamden and New Haven land records in May, 1860, after Mr. Whitney's death which occurred in the preceding February. Mr. Suydam applied for a discharge in insolvency in December, 1857, but did not receive it until after Mr. Whitney's death.

There was but a single attesting witness to the deed, namely, the magistrate before whom it was acknowledged in New York City; and the attestation clause stated that it was sealed and delivered in his presence. There were two certificates of acknowledgment, made in New York two days after the date of the deed. One followed the New York form and was signed by him as a commissioner of deeds of New York; the other followed the Connecticut form and was signed by him as a commissioner appointed by this State to take the acknowledgment of deeds.

Having but a single witness the deed was, at the date of its delivery, ineffective to convey any interest in land in Connecticut. Stat. (Comp. 1854) p. 631, § 8; *Farrel Foundry* v. *Dart*, 26 Conn. 376, 381. An Act entitled "An Act to confirm Certain Deeds," took effect on June 16th, 1858, providing that all deeds of Connecticut real estate, which had been executed in any other State according to its law, with only one attesting witness, but were in all other respects executed according to our laws, should be valid as

against the grantor and all persons subsequently acquiring an interest under him with notice. Public Acts of 1858, p. 46, Chap. LXIV. A later statute, passed in 1864, made all deeds of Connecticut lands which had been or should be executed and acknowledged in any other State in conformity with its laws relative to lands therein situated, "valid to all intents and purposes"; with a saving in favor of any title previously "acquired in good faith, by any creditor of, or purchaser from, the grantor in any deed or conveyance defectively executed, or from his heirs or devisees." Public Acts of 1864, p. 19, Chap. IV.

On May 19th, 1855, Mr. Whitney gave Mrs. Suydam, and she took, exclusive possession and occupation of Ivy Nook, as her own; and soon afterward, and prior to August 4th, 1857, she commenced to make improvements and changes in the house and grounds. This exclusive possession she held till her death in November, 1905, when it passed to the executors and trustees under her will. They sold the place for over $50,000, and the fund was deposited, by agreement of all parties in interest, with the plaintiff, to be disposed of as a proper court might order.

She survived Mr. Suydam many years, and at her death was the widow of one Nathan A. Baldwin.

The attestation clause was prima facie proof that the deed of August 4th, 1857, was delivered in New York, and there was no evidence to the contrary. At that time dower could only be claimed under Connecticut law in lands of which the husband died possessed in his own right.

In view of the execution and delivery, under such circumstances, of such a conveyance in the State of New York, where a deed with a single witness was sufficient to convey lands therein situated, a presumption arises, *ut res magis valeat, quam pereat,* that the parties, at the time, had in mind the law of New York as that which would govern the meaning and effect of the instrument in question. They could hardly have supposed that they were executing on

the one side and accepting on the other a conveyance which conveyed nothing. *Pritchard* v. *Norton*, 106 U. S. 124, 137, 1 Sup. Ct. Rep. 102.

Nothing is expressly stated in the instrument itself as to what should be the governing law. It must therefore be determined under the established principles of private international law. By these the proper law of every contract under such circumstances, so far as the contractual obligations of the parties to each other are concerned, is that by which they may justly be presumed to have meant to bind themselves. The question, prima facie at least, is not what did they in fact intend, but what would naturally have been the intention of sensible persons in the position occupied by Mr. and Mrs. Whitney, on the one part, and Mrs. Suydam, on the other, if their attention had been directed to contingencies which escaped their notice. Dicey on the Conflict of Laws (Moore's Ed.) 563–566. Only thus can uniformity and certainty of construction be secured. The parties to the deed now in question chose to execute it in New York. They had also chosen to establish their domicil there. The effect of these choices is a matter of law. Minor on the Conflict of Laws, p. 378, note. It could not make the conveyance avail to pass title under the law of Connecticut. It could make it avail to establish a relation between the parties with respect to the land, out of which, by force of subsequent events, important rights in respect to it might arise. See Dicey on the Conflict of Laws (Moore's Ed.) 770; Fœlix, *Traité du Droit International Privé,* 1, § 96.

The presumption that the language employed in the deed to Mrs. Suydam was used by the parties in the sense attributed to it alike by the common *lex domicilii* and the *lex loci celebrationis* is not rebutted by anything in the record.

By the laws of New York, as they existed in August, 1857, the deed to Mrs. Suydam, had it been of land in that State, would have given her an absolute fee.

There was therefore a presumption, under the rules of

private international law, that, at the date of the convey-ance, Mr. Whitney and Mrs. Suydam understood its terms to be such as to invest her with an absolute estate in fee simple.

The Superior Court apparently did not take this pre-sumption into consideration. No allusion was made to it in the finding or to the absence of two attesting witnesses to the deed. The record, however, states that upon the trial the executors of Mrs. Baldwin's will offered evidence tend-ing to prove that her father, in making the purchase of Ivy Nook, intended to make a gift of it to her, and that she, in entering into possession, intended to take it as a gift; but the court ruled that evidence of these facts was not ad-missible to vary the legal effect of the deed of August 4th, 1857.

It was one of the claims of the executors, who were trus-tees of her residuary estate, that she took adverse possession of the property on May 19th, 1855, and maintained it till her death. If she did, she acquired an absolute title, which passed to them. Whether she did was therefore an impor-tant question in the cause.

In the judgment-file it is stated that the court held that (1) the deed of 1857 conveyed a life estate only, with a power of disposition annexed; (2) this power was never exercised; (3) upon the death of the life tenant the execu-tor and trustee of the residuary estate under her father's will became the absolute owner of Ivy Nook; and (4) "the other facts and circumstances in evidence, concerning which there was little if any controversy, do not and should not affect the general conclusion."

Among the "facts and circumstances" of which there was some evidence and to which this reference was made in the judgment-file are these: that she held possession under a claim of right, as owner; that her father, who was worth at the time of his death about $4,000,000, and had long owned large landed properties, kept an account of the sepa-

rate items of his real estate upon his books, but did not enter Ivy Nook as one of them; that she probably never personally had or saw the deed of 1857; that it did not appear that she ever knew of the particular terms in which it was expressed; and that after the death of her father and of Mr. Suydam it was found in the office of the estate of Mr. Whitney where both his papers and those of Mr. Suydam were kept.

It is evident from the interlocutory ruling above mentioned and the terms of the judgment-file, that the Superior Court regarded evidence of such a nature as immaterial, because, in its opinion, the case must turn on the proper construction of the deed of 1857, and the effect of that could not be varied by parol.

It was made, however, to one who had already been in the actual and exclusive possession of the granted premises for more than two years, and whose representatives claimed that this possession was adverse in its character. The finding and the paragraphs marked *proven* in the draft-finding filed by the appellants, show, as above stated, that Ivy Nook was bought for and as a gift to Mrs. Suydam, and that she was put by her father in immediate and exclusive possession of it as her own. Any evidence tending to prove that the transaction amounted to a present and executed gift was therefore material to the issues on trial.

Possession of land taken under a parol gift is adverse as against the donor, and if continued for fifteen years establishes a title as against him, and all claiming under him. *Clark* v. *Gilbert*, 39 Conn. 94, 97. While the gift, regarded as a conveyance of title, was void, that it was made is relevant to show that the donee entered under a claim of title in himself, and not in subordination to that in fact held by the donor. *Comins* v. *Comins*, 21 Conn. 413, 417. The executor and trustee under the will of Stephen Whitney was right in claiming that the terms of the deed of 1857 were of importance as ascertaining the nature of the possession held by

the grantee, both before and after its date. But it was not necessarily conclusive. *Searles* v. *DeLadson,* 81 Conn. 133, 136, 70 Atl. 589. If her possession was taken originally under an absolute gift, and under a claim (however unfounded) of absolute ownership in herself, it was certainly not impossible that her continuing in possession after the delivery of the deed of 1857, which as a conveyance of the legal title was absolutely void, was understood by her to be equally adverse in character. To show such an understanding on her part, evidence that she never saw or read that deed, or knew of its terms; that her father never included Ivy Nook in the number of his possessions; and that she continued to occupy it under a claim of right, as owner, was relevant and material. *Turner* v. *Baldwin,* 44 Conn. 121.

The effect of an instrument purporting to pass title to real estate must be determined by the law of the State or country in which this real estate is situated. But what the parties to the instrument, at the time of its execution, understood to be its effect (whenever that may become important) is to be determined by the law, whatever it was, which they then had in mind as governing its construction and operation. See *Clarke's Appeal,* 70 Conn. 195, 218, 39 Atl. 155.

As already stated, the Superior Court overlooked one important means of ascertaining from the proofs before it the understanding of the parties to the deed of 1857, and there must therefore be a new trial.

The appellants have pursued the remedy given by General Statutes, § 797, for a correction of the finding and ask that it may be corrected by adding certain paragraphs from their draft-finding. We do not pass upon this request, since the record, as it stands, is sufficient to sustain the appeal, and a new trial must be ordered, upon which parol evidence of the conduct of the parties to the deed of 1857, whether before or after its delivery, shall not be regarded as necessarily explained and controlled by what may be the

legal effect of that conveyance under the laws of Connecticut.

There is error and a new trial is ordered.

In this opinion the other judges concurred.