The New Haven Trust Company *vs.* Theodore C. Camp et als., Executors and Trustees.

Third Judicial District, Bridgeport, April Term, 1910.
Hall, C. J., Prentice, Thayer, Roraback and Robinson, Js.

One who accepts an oral gift of land made with an intent to confer an absolute estate, and pursuant thereto takes and holds exclusive possession under a claim of ownership for more than fifteen years, acquires thereby a title in fee.

The conveyance of a life estate to one who has been for several years in exclusive possession under a claim of absolute ownership, based on an oral gift from the grantor, does not necessarily and as matter of law render his possession thereafter subservient to the terms of such instrument. If such deed would have been effectual to convey a fee under the law of the State where the parties resided and where it was executed and delivered, had the land been situated in that State, a presumption arises that the parties believed the deed conveyed such an estate and merely confirmed the previous oral gift of the grantor, especially if it does not appear that the grantee ever saw the deed or had any actual knowledge of its provisions; and unless this presumption is rebutted, the trial court is justified in finding that the possession of the grantee continued to be adverse until it ripened into a title in fee simple.

Argued April 14th—decided July 12th, 1910.

ACTION of interpleader to determine the rights of the respective defendants in and to the sum of $50,000 derived from a sale of real estate which had been made pursuant to agreement of all the parties, brought to and tried by the Superior Court in New Haven County, *Curtis, J.;* facts found and judgment rendered in favor of the defendants Camp and McLanahan, executors and trustees, from which the other defendant, Phœnix, executor and trustee, appealed. *No error.*

*Henry C. White* and *Leonard M. Daggett,* for the appellant, Phœnix, executor and trustee.

*Henry Stoddard,* with whom was *George M. Gunn,* for the appellees Camp *et als.,* executors and trustees.

HALL, C. J. The fund in question, which is the avails of the sale of certain real property situated partly in New Haven and partly in Hamden in this State, was deposited with the plaintiff under a stipulation by the parties in interest, represented by the defendant Phillips Phœnix, executor and trustee under the will of Stephen Whitney, deceased, and the defendants Theodore C. Camp and George X. McLanahan, executors and trustees under the last will of Caroline W. Baldwin, deceased, that an action of interpleader should be promptly instituted by the plaintiff trust company to enable the claimants to obtain a judicial determination of the ownership of said fund.

This is the second time this case has been before us. Upon the first trial in the Superior Court the fund was awarded to the claimant Phœnix. Upon the appeal to this court, reported in 81 Conn. 539, 71 Atl. 788, a new trial was ordered. Upon the second trial in the Superior Court the fund was awarded to the claimants Camp and McLanahan. From that judgment the present appeal was taken. The facts from which these contrary con-

clusions were reached by the two trial courts were practically the same. As found at the first trial they are stated in the opinion of this court by CHIEF JUS-TICE BALDWIN, in the decision of said first appeal. As found in the present appeal they are substantially these:—

In 1855 Stephen Whitney of New York, at the request of his youngest child, Caroline, then the wife of Ferdinand Suydam, afterward Mrs. Crane and later Mrs. Baldwin, purchased for the sum of $11,000 the property called Ivy Nook, as an absolute gift to and for his said daughter Caroline, and then gave to her, and she then took, "exclusive and adverse possession and occupation of said property as her own, and resided there with her husband, . . . and immediately . . . commenced to make improvements and changes in the house and grounds," the extent and cost of which did not appear in evidence. "She so held such exclusive and adverse possession and occupation of said property until her death, November 16, 1905, and then her executors and trustees under her will took and held possession thereof until the same was sold to Mr. Brewster, on or about the 6th day of June, 1907."

Said Caroline "repeatedly, in substance, declared that her father bought Ivy Nook for her, and as a present to her, gave it to her, and that Ivy Nook was her property, and that she was occupying Ivy Nook as her own property," and she "at all times held and occupied Ivy Nook as her absolute property, and at all times so claimed and always held said property adversely to all the world, and her father and mother both understood that their said daughter so held and claimed the said property."

Because of the insolvency of Ferdinand Suydam, Mr. Whitney retained the title to Ivy Nook in his own name until August 4th, 1857, when, with the intention of

vesting an absolute title in fee to said property in their daughter Caroline, to her sole and separate use, and free from the interference of any husband or creditor of any husband, he and his wife executed in New York a deed of said property to Mrs. Suydam "to her sole and separate use during her natural life . . . giving and granting to the said Caroline full power to convey or dispose of the said premises in fee simple by deed will or otherwise."

Said grantors understood that said deed conveyed to Mrs. Suydam, and they intended thereby to convey to her, an absolute estate in fee simple, as said deed would have conveyed to her by the laws of New York had the property described therein been situated in that State.

Said deed was attested by but one witness. It did not appear how it was delivered, nor did it appear that Mrs. Suydam ever saw it, or that she had any actual knowledge of its language. At the time it was executed, and always thereafter, she was a domiciled resident of the city of New York, except when she was the wife of Nathan A. Baldwin, after 1891, and excepting that she occupied Ivy Nook a portion of the time as a country place. Said deed was recorded in the land records of New Haven and of Hamden in May, 1860. It is not found who caused it to be recorded. Upon the death of said Caroline in 1905, this deed was found in a package of old papers in the safe of the defendant Camp, in the office, in New York, of the manager of the Stephen Whitney estate. Said Camp had for many years prior to Caroline's death been her business agent and attorney in fact, and had also assisted in the management of the Whitney estate. He had never seen said deed before it was so found in 1905, although he had been in said office from his boyhood and had known said Caroline since 1869.

Mrs. Suydam made no disposal of Ivy Nook, excepting that the tenth clause of her will contained this language: "All the rest, residue and remainder of my estate both real and personal, whatsoever and wheresoever, as well that which I now have as that which I may hereafter acquire and die seized or possessed of or entitled to, including all my estate not hereinbefore effectually disposed of, I give, devise and bequeath unto my executors hereinafter named . . . in trust. . . ." Upon her death she left an estate valued at about $1,250,000.

In their pleadings filed by order of court, said Camp and McLanahan claimed that in 1855 Mr. Whitney gave Ivy Nook to his daughter Caroline; that she immediately took exclusive possession of it as her own; that until her death she kept and held exclusive and adverse possession of it, believing and claiming it to be her own; that the deed of 1857 was executed and delivered by Mr. and Mrs. Whitney with the intention of conveying and vesting in said Caroline an absolute estate therein; and that by the tenth clause of her will, regarded either as an exercise of the power of appointment given by the deed of 1857, or as a residuary devise, she conveyed to the appellees, Camp and McLanahan, the trust title to Ivy Nook.

The claims of the appellant upon the pleadings and upon this appeal, stated generally, are: first, that under the deed of 1857 Caroline took only a life estate, with a power of disposition, which she failed to exercise; and second, that upon the facts found she could not be held to have acquired a title by adverse possession.

As the language of the judgment-file is that Ivy Nook became the property of Caroline by gift and adverse possession, we have no occasion to discuss the question, which was not passed upon by the court below at the second trial, of whether the tenth clause of the will of

Caroline could be regarded as an exercise of the power of disposition claimed to have been given by the deed of 1857.

The contention of the appellant, that the facts found preclude the acquiring by Caroline of a title to Ivy Nook by adverse possession, is based upon the rule of law that the possession of a life tenant is the possession of the owner of the reversion or the remainder, and cannot therefore be adverse to either.

We do not understand that the trial court disregarded this rule of law, but rather that it held that Mrs. Suydam might properly be regarded as never having held as a life tenant, but always as an absolute owner in fee.

Manifestly the relation of life tenant and reversioner did not exist between Mr. Whitney and his daughter when she took possession of Ivy Nook in May, 1855. She took possession as he intended she should, and understood she had, as absolute owner by gift, and the court has found that she continued to hold such exclusive and adverse possession until her death on November 16th, 1905. Such possession under a parol gift establishes a title, if continued for fifteen years. *New Haven Trust Co.* v. *Camp*, 81 Conn. 539, 545, 71 Atl. 788; *Clark* v. *Gilbert*, 39 Conn. 94, 97.

But it is the appellant's claim that Mrs. Suydam became a life tenant by force of the delivery of the deed of 1857, the subsequent validating Acts of the legislature, and by the recording of the deed in 1860; and that she could not thereafter hold adversely.

Mrs. Suydam did not become a life tenant by virtue of the deed of 1857. That deed was ineffective to pass title, since it was attested by but one witness. Comp. 1854, p. 631, § 8. As we said upon the former appeal (81 Conn. 545, 546, 71 Atl. 791), this instrument was admissible evidence, but not conclusive evidence, that she did not hold adversely, and notwithstanding such deed it was

not impossible for her, having taken possession originally under an absolute gift, to continue holding adversely after the delivery of the deed of 1857.

The validating Act of 1858 (Public Acts of 1858, Chap. 64, p. 46) only rendered the deed valid "as against the grantor and all persons subsequently acquiring an interest under him with notice." Neither this Act, for the benefit of the grantee and those claiming under him, nor subsequent confirming Acts rendering such defectively executed deeds valid generally, could either change the character of Mrs. Suydam's possession prior to their passage, or compel her to so change the character of her possession as to work an injury to herself and to defeat what is found to have been the purpose of her father and mother in executing and delivering said deed, namely, to convey to Mrs. Suydam an absolute estate in fee simple in said property. Possession by one as an absolute owner is not necessarily subservient to the title shown by an existing deed. *Searles* v. *DeLadson,* 81 Conn. 133, 70 Atl. 589.

With whatever knowledge of the language and effect of a deed which has been legally delivered and afterward recorded the law charges the parties to it, the fact that the deed of 1857 was recorded in 1860, though strong evidence, is not necessarily controlling evidence of an actual intention of the grantors to convey, nor of the grantee to receive, the title described in the deed, nor conclusive evidence that the grantee did not at all times hold and occupy the property described in the deed as an absolute owner in fee.

The usual force of the recording of a deed, as evidence of the title claimed under it, is greatly weakened in this case by the fact that, under the circumstances under which the deed of 1857 was executed, there is a presumption, as we held upon the former appeal, that the parties to it believed that it conveyed a fee. In

examining the subsequent acts of the parties with reference to the possession of Ivy Nook, and with reference to the deed of 1857, this presumption is to be considered. The trial court has not only said that this presumption was not rebutted, but has found as a fact that it was the actual intention of the grantors that the deed should convey a fee, and that they actually believed that it did, and that under such belief of absolute ownership Mrs. Suydam occupied Ivy Nook adversely for fifty years, and so occupied adversely with the knowledge of Mr. and Mrs. Whitney while they lived. In the absence of evidence that any one has been misled by the record, the fact that the deed of 1857 was caused to be recorded in the land records, as above stated, did not prevent the appellees from proving a title in Mrs. Suydam by adverse possession, different from that described in the deed.

But our decision upon the former appeal in this case is decisive of the present appeal. The facts and circumstances set forth upon this appeal record regarding the gift of Ivy Nook to Mrs. Suydam, her possession of it under the belief that it had been given to her, the execution, delivery, and recording of the deed of 1857; that it did not appear that Mrs. Suydam had ever seen the deed or knew its terms, and that after the death of her father it was found in the office of the estate of Mr. Whitney, where both his and Mrs. Suydam's papers were kept,—were all facts before us upon the first appeal. The record upon the first appeal says that there was little if any controversy concerning these facts and circumstances, and that they were all allowed to be proved under an agreement that the question of their admissibility might be ruled upon when the case should be finally decided. In deciding the case upon the first trial, the Superior Court ruled that these facts were immaterial, upon the ground that as to Mrs. Suydam's

title the case must turn upon the proper construction of the deed of 1857.

We said in the opinion upon the former appeal, 81 Conn. 539, 544, 71 Atl. 788: "It was one of the claims of the executors, who were trustees of her [Mrs. Suydam's] residuary estate, that she took adverse possession of the property on May 19th, 1855, and maintained it till her death. If she did, she acquired a title, which passed to them. Whether she did was therefore an important question in the cause." As bearing upon that question, by showing that there was an executed gift to Mrs. Suydam of this property, and that she took possession of it and held it as a gift, we held, upon the former appeal (p. 545), that these facts so held to be immaterial should have been considered by the trial court, and further held (pp. 542, 546) that the trial court erred in not considering, as bearing upon the question of adverse possession, the presumption which arose from the circumstances under which the deed of 1857 was executed and delivered, that the parties to it *had in mind* the law of New York as that which would govern the meaning and effect of the deed, and *understood* its terms to be such as to invest Mrs. Suydam with an absolute estate in fee simple.

Upon these grounds we granted a new trial upon the former appeal. In doing so we in effect held that the failure of the trial court to consider the facts above stated was harmful to the then appellant upon the question of title in Mrs. Suydam by adverse possession, and that upon a consideration of these facts the trial court might properly find, as it has found upon the second trial as stated in the judgment-file, that "said Ivy Nook property became the property of said Caroline by such gift and adverse possession." In reaching such conclusion we think the trial court applied the law as laid down in our opinion upon the former appeal,

and we have discovered no sufficient reason for revers-
ing or modifying that decision.

The finding fairly presents the questions of law de-
cided by the trial court, and we make none of the
corrections requested.

There is no error.

In this opinion the other judges concurred.