CONNECTICUT BANK AND TRUST COMPANY
*v.* SYLVAN KATSKE ET AL.

SUPERIOR COURT     GEOGRAPHICAL AREA NO. 21     FILE NO. 072831
AT NORWICH

Memorandum filed February 28, 1986

*Brown, Jacobson, Jewett & Laudone,* for the plaintiff.
*Clendenen & Lesser,* for the named defendant et al.

BERDON, J. This is an action brought by the plaintiff, Connecticut Bank and Trust Company, to foreclose a mortgage on property owned by the defendants Sylvan and Anita Katske (defendants). The mortgage secures a guarantee on a loan made by the plaintiff to Ansyl, Inc., (Ansyl) on December 28, 1979, in the amount of $218,700. The loan was guaranteed in part by the Small Business Administration of the United States (SBA). The defendants were principals of Ansyl, which operated several retail camera stores. Ansyl defaulted on said loan and filed bankruptcy in June of 1980. After applying the net proceeds received from the trustee in bankruptcy, the court finds that the sum of $191,965.10[1] is due on the note from Ansyl (the plaintiff waived all interest on the note).[2]

| [1] Principal sum of note | $218,700.00 |
|---|---|
| Less payments made by Ansyl | 16,545.04 |
| | $202,154.96 |
| Less proceeds from trustee in bankruptcy | 18.924.19 |
| Net sum due | $183,230.77 |

[2] The plaintiff waived all interest due on the note which made moot certain other special defenses of the defendants.

The defendants have filed several special defenses which raise the following issues: (1) whether the plaintiff had standing to institute this foreclosure action; (2) whether the guarantee and the note are contracts of adhesion and are unconscionable; and (3) whether the plaintiff engaged in a series of unfair or deceptive acts in violation of the Connecticut Unfair Trade Practices Act (CUTPA). General Statutes § 42-110a et seq.

## I

### THE PLAINTIFF'S STANDING

Upon default by Ansyl, the note together with the defendants' guarantee and the mortgage were assigned to the SBA and the plaintiff was paid for that portion of its loan which was guaranteed. On July 12, 1982, prior to the commencement of this action of foreclosure on February 2, 1983, the SBA reassigned the mortgage on the defendants' property for the purpose of collecting on that guarantee. The SBA at that time inadvertently failed to assign the note, which is the basis of the defendants' claim that the plaintiff had no standing to foreclose the mortgage.

The court finds that it was the intention of the SBA to assign both the debt and the defendants' mortgage to the plaintiff. When a mortgage is assigned but no transfer of the debt is made, extrinsic evidence is received "to determine whether it was the intention to include the debt on the obligation representing it within the term 'mortgage.' " *Stegas* v. *Stegas,* 3 Conn. Sup. 217, 219 (1936). Indeed, when this case came to the attention of the plaintiff and the SBA, the note was formally assigned during the pendency of this action. Clearly, the plaintiff has standing to institute foreclosure proceedings inasmuch as it has legal title to the debt and mortgage securing the guarantee on the debt. *Second Exeter Corporation* v. *Epstein,* 5 Conn. App.

427, 430, 499 A.2d 429 (1985), cert. denied, 198 Conn. 802, 502 A.2d 932 (1986). The court finds there is no merit to this special defense.

## II

### UNCONSCIONABILITY

The defendants first claim that the court should deny the plaintiff the right to foreclose the mortgage on equitable grounds. It is clear "that a trial court in foreclosure proceedings has discretion, on equitable considerations and principles, to withhold foreclosure or to reduce the amount of the stated indebtedness." *Hamm* v. *Taylor,* 180 Conn. 491, 497, 429 A.2d 946 (1980). This requires the court to analyze the commercial setting to determine whether the plaintiff's conduct was unconscionable and so intertwined with the loan made to Ansyl that the court should withhold foreclosure under equitable principles.

There was a long-standing business relationship between Ansyl and the plaintiff. This relationship included the making of short-term loans by the plaintiff. In addition, on February 10, 1976, the plaintiff lent to Ansyl $150,000, which loan was guaranteed in part by the SBA (1976 SBA loan).

In 1977, James R. Brown, a vice-president of the plaintiff, became the officer in charge of the Ansyl account. The relationship between Brown and the defendants was not good from the beginning. During the early part of 1978, it became apparent that Ansyl would require additional financing. In May of 1978, Brown insisted that Ansyl reduce the selling space of its Meadow Shopping Center store, presumably to encourage and compel Ansyl to reduce its inventory before the plaintiff would consider additional financing. Ansyl's inventories were large compared to national statistics. Ansyl reluctantly complied.

During the same month of May, 1978, Brown, for the first time and without warning, caused an Ansyl check in the amount of $1700 issued to Eastman Kodak (Kodak) to be returned because of uncollected funds. At that time, Brown knew that Kodak was a major supplier of Ansyl, and also an important trade credit reference. He personally monitored Ansyl's checking account and could have returned other checks that he allowed to clear. Brown, however, singled out the Kodak check. Although the funds in the account at that time were uncollected, the balance of Ansyl's account included a substantial cashier's check from a California bank which was more than sufficient to cover the Kodak check. As a result of returning the check, Kodak put Ansyl on a "cash on delivery" basis, which added to its financial difficulties. The court must conclude that the return of the Kodak check, without warning to Ansyl, was motivated by Brown's animosity towards the defendants.

Arrangements were finally made for Ansyl to obtain a new loan for the amount of $150,000 which would also be guaranteed in part by the SBA. The closing for the loan was scheduled for September of 1978. At the September closing, the defendants learned for the first time that Brown was insisting, as a condition for the loan, that the inventory purchases of Ansyl be limited to 65 percent of the prior month's net sales. Such a restriction would be sheer disaster for Ansyl. For example, it would be impossible to increase the inventory for Christmas and other peak selling periods with such a restriction. Brown refused, on behalf of the plaintiff, to grant the loan without the condition and as a result there was no closing. The defendants attempted to obtain financing elsewhere without success.

Ansyl finally accepted the terms and on November 9, 1978, there was a closing for the loan in the amount of $150,000 (1978 SBA loan). The proceeds of the 1978

SBA loan were distributed in approximate amounts as follows: $94,000 to pay the balance of the 1976 SBA loan, $10,000 to repay the plaintiff for unsecured loan, $43,000 for trade creditors and the balance of $3000 for working capital.

Shortly after the 1978 SBA loan closed, it became apparent that the defendants could not make it without additional financing. A new loan was arranged in the sum of $218,700 which was closed on December 28, 1979 (1979 SBA loan). The balance of the 1978 SBA loan and the trade creditors were paid from the proceeds of this loan. The balance of the 1978 SBA loan and the guarantee given by the defendants herein is the subject matter of this foreclosure action.

The defendants seek to prevent this foreclosure based upon the following conduct of the plaintiff that they claim to be unconscionable: (1) the plaintiff's requirement in May of 1978 that Ansyl reduce its selling space by 30 percent in the Norwichtown store; (2) the plaintiff's return in May of 1978 of the Kodak check in the amount of $1700 because of uncollected funds; and (3) the condition of the 1978 SBA loan requiring an inventory limitation of 65 percent of the prior month's sales.

The selling space reduction in May of 1978 had nothing to do with the 1979 SBA loan and indeed occurred before the 1978 SBA loan. Although the court finds Brown's conduct of returning the Kodak check to be reprehensible, it likewise had nothing to do with the 1978 or 1979 SBA loans. The inventory restriction in the 1978 SBA loan was just plain foolish, but it was not enforced or carried forward in the 1979 SBA loan. Moreover, Ansyl and the defendants were represented by counsel for the 1978 SBA loan. In short, there was no nexus between the plaintiff's conduct about which the defendants complain and the 1978 or 1979 SBA

loans. Under the circumstances of this case, the closing of the 1978 SBA loan wiped the unconscionable slate clean.

## III

## CUTPA

The defendants also claim that the conduct on the part of the plaintiff constituted unfair trade practices in violation of CUTPA. They seek to avoid foreclosure through CUTPA which authorizes the court, in addition to awarding damages, to "provide such equitable relief as it deems necessary or proper." General Statutes § 42-110g.

The claim under CUTPA is predicated on the following: (1) the plaintiff's delay in granting Ansyl short-term financing; (2) the plaintiff's return of the $1700 Kodak check; (3) the plaintiff's imposition of the 30 percent reduction on Ansyl's floor selling space; (4) the plaintiff's imposition of the inventory purchasing restriction of 65 percent; and (5) the plaintiff's return of Ansyl payroll checks in March of 1979.

Even if we assume, arguendo, that the above acts constituted unfair trade practices and that the equitable provisions of CUTPA apply, the defendants are still unable to prove that these violations require the remedy that they seek. The first, second and third claims occurred long before the granting of the 1979 SBA loan and even before the 1978 SBA loan was made when the defendants were represented by counsel. In regard to the fourth and fifth claims, the defendants have failed to prove a nexus between these demands on the part of the plaintiff and harm caused to Ansyl. The defendants must prove an "ascertainable loss." General Statutes § 42-110g; *Conaway* v. *Prestia,* 191 Conn. 484, 494–95, 464 A.2d 847 (1983). Finally, the fifth claim, the return of payroll checks, certainly was not an unfair

trade practice. The court finds that adequate warning was given to Ansyl and the defendants and that the terms of making the payroll checks good were not met by the defendants.

## IV

In sum, the court finds that the defendants have failed to sustain their burden of proof on the special defenses and finds the issues for the plaintiff on the complaint of foreclosure. Accordingly, strict foreclosure is hereby entered in favor of the plaintiff against the defendants. This leaves the remaining issue of the law date that was bifurcated and which will be necesary to establish before final judgment is entered. If the parties are unable to stipulate to such date, counsel should contact the court and arrangements will be made for an appropriate hearing.