[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action by the plaintiff, R.A.C. Corporation, Inc. (R.A.C.), claiming violations by The Great Atlantic Pacific Tea Company (AP), and the other defendants, of two Connecticut statutes prohibiting antitrust and unfair trade practices. The other defendants are Remo Tartaglia and several other individuals, all of whom who own a shopping center on Boston Avenue in Bridgeport, and who are collectively referred to as the landlords.
In a two count complaint, the plaintiff R.A.C. claims that the defendants violated General Statutes 35-24 et seq., which prohibits "[e]very contract, combination, or conspiracy in restraint of any part of trade or commerce." The second count claims that the defendants violated General CT Page 2837 Statutes 42-110a through 42-110g, the Connecticut Unfair Trade Practices Act (CUTPA), which prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." See Lester v. Resort Camplands International, 27 Conn. App. 59, 70-71, A.2d (1992), for a recent summary of the elements of a CUTPA claim.
The underlying facts in this case were described by the Appellate Court in Tartaglia v. R.A.C. Corporation, 15 Conn. App. 492, 545 A.2d 573, cert. denied, 209 Conn. 810, 548 A.2d 443 (1988). This case points out that R.A.C. was a tenant of Tartaglia, and operated a liquor store at the shopping center on Boston Avenue. This lease contained an option to renew. The court pointed out that the plaintiff failed to exercise its option in a timely fashion, and therefore the court ruled in the summary process action in favor of the landlord, Tartaglia, the defendant in this action.
The plaintiff claims that the AP masterminded this eviction by pressuring the landlord to not renew the lease, and thus to terminate the relationship with the plaintiff, in order that the AP could take over the plaintiff's location for its own liquor store.
The defendants have now moved for summary judgment (#231). The criteria for the granting of summary judgment were reiterated recently by the Appellate Court in Cummings and Lockwood v. Gray, 26 Conn. App. 293,296-297, 600 A.2d 1040 (1991), and can be summarized as follows: (i) such a judgment may be granted if there is no genuine issue as to any material fact; (ii) the moving party has the burden of proving the nonexistence of any material fact, the evidence must be viewed in the light most favorable to the nonmovant, and the test is whether the moving party would be entitled to a directed verdict on the same facts; (in) a material fact is one that will make a difference in the outcome of the case; and (iv) once the movant presents evidence supporting a motion for summary judgment, the nonmoving party must demonstrate the existence of a genuine issue of material fact by submitting evidence disclosing the existence of such an issue. The court's function, according to Lomangino v. LaChance Farms. Inc., 17 Conn. App. 436, 438, 553 A.2d 197 (1989), is not to decide the merits of any issues of material fact, but merely to determine whether such issues exist.
Construing the complaint most favorably for the plaintiff, it is assumed that AP pressured the landlords not to renew the lease so that it could establish its own liquor store at the plaintiff's location, and also that the A P, not the landlords, initiated negotiations for the eventual lease of the plaintiff's premises between itself as tenant, and the Tartaglia group as landlords.
Nevertheless, we are left with two inescapable facts. The first is that the Appellate Court in the summary process case found as a matter of law that the plaintiff corporation had failed to renew its lease in a timely fashion. Secondly, the president of the plaintiff corporation, in her deposition, concedes that had her corporation taken steps to renew the CT Page 2838 lease at the proper time, the lease would have been renewed, and the corporation would have retained possession of the liquor store.
It follows, therefore, in my opinion, that no matter how evil AP's scheme to take over the plaintiff's liquor store location may have been, the fact remains that the plaintiff caused its own loss by not renewing the lease in a timely fashion, according to the Appellate Court.
With regard to CUTPA, General Statutes 42-110g(a) provides for compensation to a person suffering an ascertainable loss "as a result of the use or employment of a method, act or practice prohibited by section 42-110b." In like manner, General Statutes 35-35, the antitrust statute, provides for recovery by one injured "by any violation of the provisions of this chapter." It appears, therefore, that a defendant must cause the plaintiff's loss, whereas in this case it was the plaintiff corporation's own neglect in not renewing the lease that caused its loss. In Connecticut Bank and Trust Company v. Katske, 40 Conn. Sup. 560, 566,535 A.2d 836 (1986), the court stated that there must be a "nexus" between a defendant's conduct and the harm caused to a plaintiff in a CUTPA case. There does not appear to be any nexus in this case between the alleged conduct of AP in interfering with a landlord-tenant relationship, and the loss to the plaintiff. The Appellate Court refused to consider any equitable claim of R.A.C. in the eviction action, because the delay in renewing the lease was so great. In the affidavit in opposition to the motion for summary judgment, plaintiff's president reiterates exactly the same claim to the effect that her husband's impending death caused her to neglect to renew the lease, a claim previously rejected by the Appellate Court.
Moreover, the claimed interference with a business relationship is contrary to the Appellate Court's determination that the lease was properly terminated, that the right to renew had expired, and that the plaintiff had no further interest in the premises. See New Britain National Bank v. Vecchiolla, 1 CSCR 275 (1986), which stated that: "[t]here is nothing unfair or deceptive where a contract is terminated for good cause pursuant to the terms of the agreement itself," citing McKeown Distributors, Inc. v. Gyp-Crete Corporation, 618 F. Sup. 632, 644 (D.Conn. 1985).
Duhaime v. American Reserve Life Insurance Company, 200 Conn. 360, 366,511 A.2d 333 (1986), held that a CUTPA claim was barred by the principles of res judicata or claim preclusion, where the plaintiff attempted to relitigate in a second suit his claim in a prior action that the insurer refused to pay him in accordance with an insurance policy. "It is of no moment mat the plaintiff's original claim, on the insurance contract, alleged the breach of a common law duty, while the present CUTPA claim invokes an alleged right to statutory relief." R.A.C., in the eviction action, sought to invoke equitable principles that its president neglected to renew the lease because of health problems in her family. The plaintiff attempts to reiterate in this case the same claim which was not accepted by the Appellate Court in the summary process case. Hence, the CUTPA claim must also be rejected for the reasons stated in the Duhaime case. CT Page 2839
Because the plaintiff has failed to establish any genuine issues of material fact, a summary judgment may enter in favor of the defendants and against the plaintiff.
Costs are to be taxed by the Clerk.
So Ordered.
Dated at Bridgeport, Connecticut this 24th day of March, 1992.
WILLIAM B. LEWIS, JUDGE