[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this action, the substitute plaintiffs seek a strict foreclosure of a mortgage made by defendants Arlene Cutler, et al., on premises known as 22 Charter Oak Avenue, Unit 1A, Hartford, Connecticut dated June 29, 1988, securing a mortgage note of even date in the amount of $175,000 both made to Sentinel Bank. After the Sentinel Bank failed, FDIC was appointed as its receiver, and after default of payment, instituted the present action. Thereafter FDIC sold the mortgage note and deed to First Bank of Beverly Hills and Gerard Savings Bank. Pursuant to the agreement of sale the mortgage was assigned to Wilshire Financial Savings Group the holding company for the two banks and subsequently assigned to the two banks, the present plaintiffs.
At trial, the defendants contested two issues; first whether the plaintiff banks were the owners of the note and mortgage and therefore had standing to obtain foreclosure, and secondly whether the plaintiffs offered credible evidence as to the amount of their debt.
 I
Defendants claim that the plaintiff banks have no standing to bring this foreclosure action because the promissory note was not assigned by Wilshire Financial Services Group to the present plaintiffs and Wilshire is still the owner of the note, and secondly that the assignment of the mortgage from Wilshire to the present plaintiffs was invalid because it was not witnessed.
Plaintiffs argue that the inadvertent failure of Wilshire to endorse the note to the plaintiffs does not deprive them of standing in this foreclosure action where there was clear evidence presented that they owned the note. Secondly, plaintiffs claim that the assignment of the mortgage was valid under Connecticut law on the same theory as the note, but that in any event, the assignment was valid under Oregon law, where the assignment was executed.
 II
At trial, the evidence made it clear that although the mortgage was purportedly transferred to the present plaintiffs, the promissory note underlying the mortgage had not been assigned to the present plaintiffs and on its face is still owned by the Wilshire Financial Services Group. Defendants claim that this disparity in ownership is "fatal to plaintiff's claim." The plaintiffs argue that Wilshire's failure to assign the note was an oversight and pursuant to Article 3 of the Uniform Commercial Code, as codified in General Statutes Section 42a-3-200 through CT Page 38242a-3-307, they are transferees entitled to assert the rights of Wilshire, their transferor and the original holder of the note.
General Statutes § 42a-3-203 (b) states, "Transfer of an instrument, whether or not the transfer is a negotiation, vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course, but the transferee cannot acquire rights of a holder in due course by a transfer, directly or indirectly, from a holder in due course if the transferee engaged in fraud or illegality affecting the instrument." The Uniform Commercial Code Comment to subsection (b) states in pertinent part, "If the transferee is not a holder because the transferor did not indorse, the transferee is nevertheless a person entitled to enforce the instrument under Section 3-301 if the transferor was a holder at the time of transfer. Although the transferee is not a holder, under subsection (b) the transferee obtained the rights of the transferor as a holder."
The defendants do not challenge Wilshire's status as the holder of the note within the meaning of § 42a-3-301.
In Connecticut Bank Trust v. Katske, 40 Conn. Sup. 560
(1986), the defendants challenged the plaintiff's standing to bring the foreclosure action where they had not been assigned a note. The court held that, "[w]hen a mortgage is assigned but no transfer of the debt is made, extrinsic evidence is received to determine whether it was the intention to include the debt on the obligation representing it within the term mortgage . . . Clearly, the plaintiff has standing to institute foreclosure proceedings inasmuch as it has legal title to the debt and mortgage securing the guarantee on the debt." Id., 562.
In Second National Bank of New Haven v. Dyer, 121 Conn. 263
(1936), the court held that where a forged note was transferred, "[t]he fact that there was delivered to the defendant with the assignment a forged note would not except for the prior assignment to the plaintiff, detract from the force of the assignment as transferring to the defendant the indebtedness represented by the genuine note as far as regards proceedings to enforce the mortgage, for the note is merely the evidence of the indebtedness secured." Id., 270.
At least one Superior Court decision has held that the mere transfer of a mortgage confers standing. "[The defendant]'s CT Page 383 reliance on the proposition that assignment of the mortgage must include an assignment of the note is mistaken. The plaintiff retains at least the beneficial interest in the mortgaged property and it is decided that this interest is sufficient to confer standing." Construction Services of Bristol. Inc. v.Sanseer Mill Association, Superior Court, judicial district of Middlesex, Docket No. 64273 (March 17, 1992, Arena, J.7 CSCR 425).
Full consideration of the circumstances surrounding the assignment of the note and mortgage to Wilshire demonstrates that Wilshire was a holder in due course within the meaning of § 42a-3-301 and therefore assigned to the plaintiffs all of its rights and privileges through its transfer of the note to the plaintiffs. The Mortgage and Loan Purchase and Sale Agreement dated April 19, 1995, serves as `extrinsic evidence' that the intent of the FDIC was to sell the note and mortgage to the plaintiffs, not Wilshire. It appears to have been clearly understood by all parties that Wilshire's role in the transaction was merely to effectuate the transfer of the note and mortgage from the FDIC to the plaintiffs.
Accordingly, it is concluded that the plaintiffs have standing to bring this foreclosure action.
 III
Defendants claim that because the assignment of mortgage was not witnessed by two witnesses, it cannot serve as a valid assignment of the mortgage and accordingly, because the plaintiffs are not the valid assignee of the mortgage, they lack standing.
General Statutes § 47-5 requires all conveyances of land to be attested to by two witnesses with their own hands. However, General Statutes § 47-17 entitled Conveyances and ReleasesExecuted outside this State, states, "(a) Notwithstanding the provisions of section 1-36, any conveyance of real estate situated in this state, any mortgage or release of mortgage or lien upon any real estate situated in this state, and any power of attorney authorizing another to convey any interest in real estate situated in this state, executed and acknowledged in any other state or territory in conformity with the laws of that state or territory relating to the conveyance of real estate therein situated or of any interest therein or with the laws of CT Page 384 this state, is valid."
In Cole v. Steinlauf, 144 Conn. 629 (1957) our Supreme Court in interpreting General Statutes § 47-17 (formerly § 7087) held that, "[a] deed purporting on its face to have been attested in another state, in the absence of anything in it to the contrary, will be deemed, prima facie, to have been executed, acknowledged and delivered in that state, thus making General Statutes § 47-17 [previously § 7087] prima facie applicable. . . . The effect of 7087 is to provide that a deed purporting to convey land in Connecticut, if executed and acknowledged in, and according to the laws of, a foreign state, will be treated as validly executed and acknowledged even though the execution and acknowledgment may not be in conformity with the law of Connecticut. . . . The effect of the statute is limited to curing defects in the form or manner of execution or acknowledgment." Id., 632.
Defendant's argument that an "assignment" of a mortgage is different from an "acknowledgement or execution" of a mortgage and making § 47-17 inapplicable in the present case is rejected. The statute specifically allows a grantor to "convey any interest in real estate situated in this state." An assignment is by definition a conveyance. See Blacks Law Dictionary Fourth Ed. p. 153.
We conclude that an assignment which was valid under Oregon law is recognizable as a valid transfer in Connecticut pursuant to General Statutes § 47-17.
Moreover, the unwitnessed assignment may be found to be a valid transfer under principles of equitable relief.
In Uptown Federal Savings and Loan v. Define, Superior Court, judicial district of Danbury, Docket No. 301328 (April 15, 1993, Moraghan, J.), a promissory note and mortgage assigned by Dime Real Estate Services — Connecticut to Dimes Savings Bank of New York was not witnessed in accordance with Section 47-5 of the General Statutes. The court, in reaching its decision on other grounds, discussed the applicability of Special Act No. 87-12, Section 3(a) and the holding in Boudreau v. Wozniak, Superior Court, judicial district of Stamford, Docket No. 100325 (July 31, 1990, Lewis, J.) to situations where a valid out-of-state assignment is challenged for failing to satisfy Connecticut requirements for the transfer of property. CT Page 385
In Boudreau, where the parties were unaware of the legal requirements pertaining to the proper execution of deeds and did not obtain the attestation of two disinterested witnesses on either the quitclaim deed or the mortgage deed the court held that, "the mortgage, although admittedly not properly executed or recorded, nonetheless [is] valid as between the parties to this action." The court discussed the effect of a properly executed out-of-state unwitnessed deed indicating that where the parties intended to execute a deed, in a proper case equity may enforce the agreement.
The record supports the conclusion that FDIC and Wilshire intended to assign the mortgage to the plaintiffs as indicated by the Assignment introduced into evidence. This assignment is enforceable not only as between the original parties, comprised of the FDIC, Wilshire and the plaintiffs, but also against the defendants. See New Haven Trust Co. v. Camp, 81 Conn. 539 (1908).
The plaintiffs have standing to bring this foreclosure action based on their ownership of the mortgage and the unendorsed note, and they are not deprived of standing because of the unwitnessed assignment of mortgage, since the assignment was executed in Oregon and is a valid transfer in Connecticut for the reasons stated above.
 IV
A further claim of the defendants was that the plaintiffs failed to offer credible evidence of the amount of debt.
Evidence of the amount of debt claimed to be $173,962.39 principal and interest through October 6, 1995 in the amount of $30,953.39 was offered by David Young, the Assistant General Counsel for Wilshire Credit Corporation. Mr. Young testified, without challenge, that Wilshire Credit Corporation was the loan servicer for the two plaintiff banks and that as part of its duties as loan officer, he was assigned the instant loan. Mr. Young testified that as the Assistant General Counsel for the plaintiffs' loan servicer, he was familiar with the plaintiffs' business records relative to this loan. He based his testimony on the amount of the debt and interest on his review of those business records. This testimony was supported in part by Plaintiffs' Trial Exhibit 7, the Mortgage and Loan Purchase and Sale Agreement which, on its last page, sets forth the principal CT Page 386 amount of the loan and the date through which interest had been paid on the debt.
Defendants have cited a recent ruling by Magistrate Egan of the U.S. District Court of Connecticut in which he disallowed a motion for deficiency judgment because the plaintiff bank had not provided adequate evidence of the amount of debt. FDIC v. Cutler,
No. 3: 94 CV00593 (August 23, 1995, Egan, U.S. Mag. Judge).
In that case, Magistrate Egan characterized the testimony of Mr. Young as a "conclusionary assertion of a regular business practice." We find that the testimony in the present case was more than conclusionary and Mr. Young's testimony relied directly on the business documents which showed the principal balance due.
 V
Defendants attack the reliability of the business records relied upon by Mr. Young and claim they are hearsay and do not meet the requirements of our business entry exception set forth in General Statutes § 52-180, principally because they did not meet the "contemporaneous making" element of the business entry exception.
The Mortgage and Loan Purchase Agreement offered by plaintiff qualified as a business record. Mr. Young testified that the document was made in the regular course of business and that it was made when the act or transaction occurred or shortly thereafter. Defendants' claim that because Mr. Young testified that he did not see the original until some weeks afterward the document does not qualify as a business entry is not persuasive. A gap of only a few weeks is not an unreasonable time in view of the requirement that it may be made at the time of occurrence or shortly thereafter. See State v. Venmerd, 159 Conn. 385, 397
(1970).
Judgment of Strict Foreclosure granted to plaintiff. Debt found to be $173,962.39 with interest at 10% per annum computed from August 29, 1993. Attorneys fees granted in the amount of $1,200. Title fee $150. Appraisal fee $200. Law date to be February 21, 1997 for owner of equity of redemption and subsequent days for subsequent encumbrancers in inverse order of priorities. All non-appearing defendants are defaulted for failure to appear. All appearing defendants are defaulted for failure to disclose/pleading.
Plaintiff to file Judgment file by January 22, 1997.
Wagner, J. T. R. CT Page 387